OMER J. JONES v. THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY.

*Railway companies—Injury to brakeman received outside of the line of his duty.*

In an action by a brakeman against the railway company for an injury received while doing dangerous work for which he had not been hired, he can show what he said on being ordered to perform it, and that he protested against the requirement.

A party can always show by his own testimony that he did not enter into an agreement relied on against him, or voluntarily enter upon the performance of work which had been imposed upon him, but

for which he had not been engaged; and he may show this by testimony of what he said at the time he was directed to do such work.

In an action by a brakeman against his employer for injuries received while engaged in more dangerous work, which he had been required to do, it is proper to allow a competent witness to show what the actual duties of a brakeman were in practice, in order to find how the additional duties differed therefrom. But where the witness himself was hired as train baggageman, and, like plaintiff, had been ordered to take part in the extra work, a question as to whether, in his opinion, the order called him out of the line of his duty, was immaterial.

Where a railway employee is injured while in the performance of work to which he was wrongfully assigned and which he had never agreed to do, he is entitled to recover damages from the railroad company.

Where a brakeman, on going into the employment of a railroad company, signs a contract binding him to obey all orders, rules, and regulations, but in which the general language applies equally to all classes of employees, the agreement to obey all orders must be construed to apply to all which are issued to him in the line of duty in which he is employed; and it does not empower the company to assign him to other duties wholly disconnected therewith and differing therefrom. And while the clause binding him to use care and caution applies to anything he may undertake to do, it is for the jury to decide whether he has violated it.

Error to Lenawee. Submitted Oct. 19. Decided Jan. 10.

CASE. Defendant brings error. Affirmed.

*Millard, Weaver & Weaver, Oscar G. Getzen-Danner* and *Ashley Pond* for appellant.

*B. F. Graves* for appellees.

MARSTON, J. The following short but clear statement of the facts in this case, and of the plaintiff's declaration, is taken from the brief of counsel for the defendant.

On the twelfth day of April, 1881, the plaintiff was seriously injured, in coupling cars, at Monroe, in this State, and this action is brought to recover for such injury. He entered into the employ of the defendant about the twenty-fourth day of June, 1880, as brakeman, and was employed as such upon a passenger train exclusively, until

the early part of February, 1881. His run was from Adrian to Jackson and return, and from Adrian to Monroe and return; the several crews taking turns in such a way as to bring plaintiff's run to Monroe every third week. Each crew was made up of the engineer, fireman, baggageman, and one brakeman. The trip to Monroe was made in the morning, arriving there soon after 9 o'clock. At Monroe the crew had nothing to do, (except the care of the train and lamps, which took but little time,) until about 8 o'clock in the evening, when they returned with the train to Adrian. The train going down in the morning was called No. 2, and the evening train No. 9. On the second day of February, Division Superintendent Charlesworth issued the following order: "Agent, Monroe: Until further notice, the engineer and crew running Nos. 2 and 9, Monroe Branch, will do the switching at that station. Show this to conductor and engineer, which will be an order for them to do it. T. J. C."

This order was occasioned by a change in the running of freight trains through to Detroit without stop at Monroe, thus leaving no freight crews at Monroe to do the yard work. After this order came out, the plaintiff, and the crew with which he was connected, was first at Monroe, on Monday, the eighth day of February. His crew consisted of Charles Luce, engineer; Joseph Nopper, fireman; Isaac Gifford, baggageman; and himself as brakeman. The baggageman ran only between Adrian and Monroe, and was with all the crews. Upon arriving at Monroe, on the morning of the eighth of February, the plaintiff was shown the order of the superintendent requiring the crews to do yard work. He made some objection, but finally went to work with the rest of the crew, and so continued, every third week until he was hurt on the twelfth of April, while coupling a Flint & Pere Marquette car loaded with lumber to an empty box car. This lumber car was so loaded that the lumber projected over the end and the plaintiff was hit by the projecting lumber, knocked against the ladder of the box car, and thrown down, and, it is

claimed, permanently injured, physically and mentally. Before this hurt he was a young man of full average mental capacity.

The plaintiff recovered and the defendant assigns error as follows: *First*, That the court erred in allowing the plaintiff to state what he said when the order of Superintendent Charlesworth was presented to him requiring him to do yard work at Monroe. We are of opinion that it was proper to allow the plaintiff to prove that, at the time this order was first presented to him, he objected to going into the yard. The theory of the plaintiff's case was, that he had been employed as a brakeman upon a passenger train, and within the scope of such employment he could not be called upon, or rightfully required to perform services of a different character, or more dangerous. And he had a right to show that he did not consent or agree to the change or the performance of extra duties, and this he could show by what he said at the time. A party can always show by his own testimony that he did not enter into a particular agreement, or that he did not voluntarily and freely enter upon a discharge of the new duties imposed, by showing what he said at the time.

We discover no legal objection to the question asked the witness Gifford as to what were the duties of a passenger brakeman. It was proper to show what the duties of a passenger brakeman were, for the purpose of ascertaining in what manner the new duties imposed differed therefrom, and this could be shown by persons familiar therewith, in practice, as the rules of the company would not be conclusive thereon.

The question asked this witness whether or not in his opinion the order referred to called him out of the line of his duty, was wholly immaterial and we cannot see how his answer thereto could in any way prejudicially affect the defendant. The questions asked this witness whether this order called plaintiff out of the line of his duty were not excepted to and need not be passed upon.

The material and important question raised is whether

the company did not have the right to direct the plaintiff to do the switching at Monroe, and also whether he did not, by complying with this order, voluntarily enter upon the discharge of such duties and assume the risks ordinarily connected therewith.

I find nothing in the written contract* of June 24, 1880, signed by the plaintiff, to prevent a recovery in this case. The contract is silent as to the particular character of his employment, except that he signed it as a brakeman, but the evidence clearly shows, and it is not disputed, that he was employed as a passenger brakeman.

The contract seems to be according to a form adopted by the company for its employees to sign, and is meant to be applicable to the different kinds of employment. The general language thereof is equally applicable to engineers,

---

*The contract reads as follows :
"Form 1287.          DATED AT ADRIAN, MICHIGAN, June 24, 1880.

I, the undersigned, having been employed in the service of the Lake Shore & Michigan Southern Railway Company, hereby acknowledge the receipt of a copy of the printed orders, rules, and regulations of said company. Also a copy of this agreement, and do hereby agree with it in consideration that it will pay me the wages stipulated ; that I will, so long as I remain in its service, faithfully respect and obey all said orders, rules, and regulations, and all others which may be adopted and of which I may have notice. And I do further agree that I will for myself, in all cases before exposing myself in working or being on the tracks or grounds of the company, or in working with or going in any manner on or with its cars, engines, machinery, or tools, examine for my own safety the condition of all machinery, tools, tracks, cars, engines, or whatever I may undertake to work upon or with, before I make use of or expose myself on or with the same, so as to ascertain, so far as I reasonably can, their condition and soundness, and that I will promptly report, either to the superintendent of the company or to its agent who may be my immediate superior officer, any defect in any track, machinery, tools, or property of the company, affecting the safety of any one using or operating upon or with the same. The object of this agreement being *first*, to protect me from suffering personal injury from any cause ; *second*, that while the company will be responsible to me for the discharge of all its duties and obligations to me, and for any fault or neglect of its own, or of its board of directors or general officers, which are the approximate cause of the injury, yet it will not be responsible to me for the consequences of my own fault or neglect, or that of any other employees of the company whether they, or either of them, are superior to me in authority as conductor, foreman, or otherwise or not, it being expressly agreed on the part of the company that it is my right and duty under all circumstances to take sufficient time before exposing myself, to make such examination as I have here agreed to, and to refuse to obey any order which would expose me to danger.

"Witness : D. McKEY.          OMER J. JONES, Brakeman."
49 Mich.—37

firemen, brakemen and others whether on freight or pas-
senger trains.   It requires the employee, and he agrees
therein, that so long as he remains in the company's service,
he will respect and obey all orders, rules and regulations, of
which he is furnished a copy, and any others that may be
adopted and of which he has notice ; that in the per-
formance of his duties he will examine for his own safety
the condition of machinery, cars, etc., before he makes use
of, or exposes himself on, the same, the object being to
protect him from suffering personal injury.

The general language used under which he agrees to obey
all rules, etc., must be held to apply only to such rules and
regulations as pertained to the duties of his employment,
and the company could not thereunder assign to him the
performance of other and different duties wholly discon-
nected therewith or differing therefrom.   So the parts
thereof requiring him to use care and caution, while ap-
plicable to anything he might undertake to do, must still
leave the question an open one for the consideration and
determination of a jury as to whether he had violated the
same or not, and this the court fairly submitted to the jury.
The order referred to did not upon its face purport to make
any permanent change in the character of the plaintiff's
employment.   He remained thereafter, as he was before, a
passenger brakeman, with this additional labor added thereto.
It is true that the plaintiff could have declined to comply
with this order, and it is equally true, as appears from the
evidence, that had he done so, he would have lost his
position as a brakeman upon the passenger train.   I am of
opinion therefore that this case comes within the rule laid
down in *Chicago, etc. Ry. Co. v. Bayfield* 37 Mich. 205, and
that much of the reasoning in the opinion in that case is
equally applicable here and need not be repeated.

I have carefully examined the charge of the court and
am of opinion that it was even more favorable to the
defendant than the facts would have warranted.   The only
wonder is that the plaintiff recovered under the charge as
given.

As I can discover no error in this record of which the defendant can complain, I am of opinion that the judgment should be affirmed with costs.

CAMPBELL, J. concurred.

COOLEY, J. My brethren put their decision in the case upon the ground that, as matter of fact, the plaintiff at the time he was injured was engaged in service upon which he was wrongfully sent, and which he had never agreed to perform. I have not thought the facts would warrant that conclusion, but I agree that if they will, the principle of the opinion is correct.

GRAVES, C. J. concurred. ·