DANIEL LEARY *vs.* BOSTON AND ALBANY RAILROAD
COMPANY.

Suffolk.    March 20. — June 25, 1885.    W. ALLEN, COLBURN, & HOLMES,
JJ., absent.

A person of full age and ordinary intelligence entered the employ of a railroad
    corporation as a freight truckman, loading and unloading cars in its yard and
    shifting freight in its freight-houses. After working in this capacity about
    three years, he was directed to perform, in addition to his regular duties, those
    of a fireman, from one to three hours a day, upon an engine which was used
    to shift freight cars in the yard, where there were many tracks, sidings, frogs,
    and switches, and to make up trains. He had acted as such fireman about
    twenty times, when, while standing on the footboard of the engine, with his
    back towards the direction in which it was moving, and waiting for its speed
    to slacken so that he could get off, he was jolted off, and injured. He had been
    brought up on a farm, and had ridden but six times in railroad cars. In an
    action against the corporation, he testified, that the engine was going so fast
    that he thought it unsafe to get off; that he never got off the engine at any
    other time when it was in motion, except when it was nearly at a standstill;
    and that he used to observe a jolting of the engine as he stood in the cab.
    *Held,* that the injury was caused by one of the risks assumed by him in his
    employment; and that the action could not be maintained.
If a servant, of full age and ordinary intelligence, upon being required by his
    master to perform other duties more dangerous and complicated than those
    embraced in his original hiring, undertakes the same, knowing their dangerous
    character, although unwillingly and from fear of losing his employment, and is
    injured by reason of his ignorance and inexperience, he cannot maintain an
    action against the master for such injury.

TORT for personal injuries occasioned to the plaintiff while
in the employ of the defendant. Trial in the Superior Court,
before *Knowlton,* J., who allowed a bill of exceptions, in sub-
stance as follows:

On April 2, 1883, the plaintiff was working temporarily as a
fireman on a locomotive in the defendant's freight yard, and, in
attempting to get off the locomotive, fell or was thrown under
the wheel, and received the injuries complained of.

There was evidence tending to show the following facts: The
locomotive was one of several used in the freight yard to shift
freight cars and make up trains; and, for this purpose, moved
frequently back and forth in the yard, which was provided with
many tracks, sidings, frogs, and switches. The locomotive was
liable to be, and in fact was, frequently jolted in passing over

the frogs, switches, and cross tracks.   The plaintiff had been in the employ of the defendant from April, 1880; and, until about five weeks before the time of his injury, worked solely as a freight truckman, loading and unloading cars and shifting freight in the defendant's freight-houses.   The locomotive was managed and run ordinarily by an engineer and fireman; but daily, in order to keep the locomotive at work, a substitute was added during the absence of the engineer or the fireman at dinner; that is, when the fireman was at dinner a substitute took his place, and when the engineer was at dinner the latter's place was taken by the fireman, whose place in turn was taken by the substitute.   One Stewart, the foreman of one of the freight-houses, had, with the knowledge of the defendant, been accustomed to detail one of the freight truckmen to act as such substitute.   About five weeks before the plaintiff's injury, he was directed by Stewart to go on the locomotive as such substitute during the dinner-time.

At this time, there was a conversation between the plaintiff and Stewart, as to which the plaintiff testified as follows: " Stewart came to me and told me that I would have to go into the engine, and work noontimes firing, while the engineer and fireman were at dinner.   I told him I did not know anything about an engine, and did not want to have anything at all to do with it.   He told me the engineer would show me what to do. I told him that did not make any difference, I was afraid of going on, and he could send somebody else who knew something about it; so I did not go that day and he did send another man that day; and a day or two after, I don't know which, he came again and said I would have to go on the engine.   I said, ' I told you before, I did not know anything about firing on an engine, and I would not have anything to do with it.'   He told me I would have to go, to go ahead and give him no more talk; and I was afraid of losing my work, and I went on the engine."   The evidence as to this conversation was contradicted by Stewart.

The plaintiff further testified, that from this time until his injury, five weeks later, he went on the locomotive during dinner-time about twenty times; that, a short time before his injury, and during the five weeks, he was without employment

for one week on account of work being slack; that, on his return to work, " I came back and worked till noon in the freight-house, and when the horn blew at twelve o'clock, Stewart asked me why I would not go on the engine. I told him Bowen had gone already. He said, ' You are all the time growling about going on the engine, so go ahead and send that man back again.' I did go, and the engine was in the engine-house to take water. Bowen was there, and I told him my order, and he went back and I went on the engine."

The evidence was conflicting as to whether the plaintiff replaced Bowen at the locomotive on the day of the injury, or a week or ten days earlier.

The plaintiff also testified as follows : " I went on the engine at twelve o'clock on the second day of April, and the fireman was on the engine before me ; the engineer was off. The fireman had charge of the engine, and as I went on the engine he was hitching on to some coal cars, and he started just to back out as I got on the engine ; he told me to get off again and fill my pipe and take a smoke, so as to have it ready for him ; to-go into the engine-house to smoke. I did not go, and he backed out towards the gate and the crossing, and I took hold of the bell-rope and rang the bell. We were working towards the gate, and he turned round and took the bell-rope out of my hand, and he told me to go ahead and do as he ordered me to do and bring that pipe ; and then I went out and stepped down on the foot-board ; I thought the engine was going to pause for me to jump off, and I remained on the footboard waiting for the engine to slacken up ; and in place of slackening up she went faster, and I was jolted up by the roughness of the tracks; I was jolted off the step, and I fell down, and my leg got mangled up. When on the footboard I stood on my right foot, the left being unsupported, holding with my right hand to the iron rail of the engine."

On cross-examination, the plaintiff testified that he had worked on the engine about twenty days; and that, when he got upon the footboard, the engine was going so fast he thought it was not safe to get off.

No one saw the plaintiff fall. Stewart testified that he saw him fifteen seconds before he fell ; that he was then descending

or ascending (he did not know which) the outside of the locomotive with his back towards the direction in which the locomotive was moving; that the locomotive was going slowly, "just moving," and that the plaintiff fell near to a switch. One Golding, the fireman, testified that the locomotive was going about as fast as a "slow walk" when he saw the plaintiff lying on the ground.

The plaintiff further testified, that he worked from one to three hours a day on the engine; and that, in getting on and off, he used the same step from which he fell; and, on cross-examination, that he did not get off the engine at all after he got on, until he got off for dinner; that he never got off the engine at any other time when it was in motion except when it was nearly at a standstill; that the engine, while he was working on it, was engaged in shifting cars, moving up and down the tracks, around different places, and going over switches, sometimes going up to the new yard, a mile away, and hauling down a string of cars; that he used to observe a jolting of the engine as he stood in the cab; that the only instructions or directions which he got from the engineer or fireman with regard to the locomotive or tender were to shovel in some coal, to put on the blower or turn it off, or to sweep out the cab, and to ring the bell; and that the engineer gave him no instructions further than to tell him what to do.

There was evidence which would have warranted the jury in finding that the plaintiff lived, during the first nineteen years of his life, upon a farm in Ireland distant several miles from any railway; that, during his life in Ireland, he had ridden upon railway cars but three times; that about January, 1880, he came to this country, being then nineteen years old; that he worked in Boston for a few weeks as a laborer, handling coal, and then, in April, 1880, went into the employ of the defendant as a freight truckman; that, in this country, he had ridden upon railroad cars but three times, excepting said locomotive; and that his knowledge of machinery was confined to that of a wheelbarrow and a freight truck.

The judge ruled that the plaintiff could not maintain the action, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*J. A. Maxwell*, for the plaintiff.

*A. L. Soule*, for the defendant.

DEVENS, J.   Where an employer knows the danger to which his servant will be exposed in the performance of any labor to which he assigns him, and does not give him sufficient and reasonable notice thereof, its dangers not being obvious, and the servant, without negligence on his own part, through inexperience, or through reliance on the directions given, fails to perceive or understand the risk, and is injured, the employer is responsible. The dangers of a particular position or mode of doing work áre often apparent to a person of capacity or knowledge of the subject, while others, from youth, inexperience, or want of capacity, may fail to appreciate them ; and a servant, even with his own consent, is not to be exposed to such dangers, unless with instructions and cautions sufficient to enable him to comprehend them, and to do his work safely with proper care on his own part.   But the servant assumes the dangers of the employment to which he voluntarily and intelligently consents, and, while ordinarily he is to be subjected only to the hazards necessarily incident to his employment, if he knows that proper precautions have been neglected, and still knowingly consents to incur the risk to which he will be exposed thereby, his assent dispenses with the duty of the master to take such precautions.   *Sullivan* v. *India Manuf. Co.* 113 Mass. 396.   *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572.

There was, in the case at bar, no defect in the roadway, the engine, or other appliances, nor any negligence in the management of them.   There was no evidence tending to show that the plaintiff was hurt by reason of any incapacity to understand the character of the employment in which he engaged.   He was a man of full age, of ordinary intelligence, and, although he had been brought up on a farm, and had ridden but six times in railroad cars, had been in the employ of the defendant for three years, loading and unloading cars in its yard and shifting freight in its warehouses.   Nor was there any peculiar danger which required to be pointed out to an inexperienced person.   That of getting off the engine when it was in motion, or of standing in such a position as to be exposed to be thrown off by its jolting, were entirely obvious ; and that the engine was liable to jolt in crossing

the frogs and switches, which were numerous in the freight yard, where alone this engine was used for the purpose of moving freight, making up trains, &c., was known to the plaintiff. That the plaintiff must have had full knowledge of all the danger he incurred while acting as a fireman on the engine, is fully shown by the fact that he had acted as fireman about twenty times, and from one to three hours each time; and, although he testified " that he never got off the engine at any other time when it was in motion except when it was nearly at a standstill," he must have been aware of the danger of being thrown off, or which would attend the attempt to leave it. Upon these facts, it would be correct to rule that the plaintiff could not maintain the action, as no fault or negligence was shown on the part of the defendant.

The facts present another inquiry which heretofore it has not been necessary to decide in this Commonwealth. It is the contention of the plaintiff, that, if a servant who is hired for work of a simple character, as in the case at bar, is required by his employer to perform other duties more dangerous and complicated, and, although at first constantly objecting thereto, from fear of losing his employment finally assents, makes the attempt, and, doing his best, is injured by reason of his ignorance and inexperience, he may maintain an action against his employer for negligence in setting him to work in a dangerous place, even if the plaintiff was aware of the danger, and might, under some circumstances, be held to have incurred the risks of the employment.

The case of *O'Connor* v. *Adams*, 120 Mass. 427, which the plaintiff deems to some extent to support his contention, is distinguishable, as in that case the evidence tended to show that the defendant's agents put the plaintiff to work in a place of peculiar danger, of which he had no knowledge or experience, without informing him of the risks, or instructing him how to avoid the danger.

In *Railroad* v. *Fort*, 17 Wall. 553, a father, who had consented to the employment of his son by the defendant's foreman as a mere helper, was held entitled to maintain an action when the son was injured by a fall from a great height, to which he had been ordered to ascend, and thus expose himself to danger.

It was deemed that the father had a right from his contract to believe that his son would not be thus exposed; and that the son's inexperience and youth prevented him from giving any assent, in taking such a risk, which could avail the defendant. The opinion of Mr. Justice Davis recognizes that, if the son had been a person of mature years, even if he had not engaged to do such work, it might well have been argued that he should have disobeyed the order, or, if he obeyed, that he took on himself the risk of the employment.

In *Lalor* v. *Chicago, Burlington, & Quincy Railroad*, 52 Ill. 401, the plaintiff's intestate, a laborer employed in loading and unloading freight cars, was ordered to couple cars by the defendant's superintendent, who knew him to be inexperienced, "unskilled, and unacquainted with the manner of doing such work, when he ordered the deceased to perform it." The fair inference from the facts was that the plaintiff's intestate did not appreciate the danger from his ignorance; and the decision is put on the ground "of misconduct of the company in exposing the deceased to this peril, and, when so exposed, in so carelessly mismanaging the engine as to cause his death."

The case of *Jones* v. *Lake Shore & Michigan Southern Railway*, 49 Mich. 573, which is deemed by the court to be fully sustained by *Chicago & Northwestern Railway* v. *Bayfield*, 37 Mich. 205, more nearly supports the plaintiff's contention. It was there held that, where the plaintiff was injured while in the employ of a railroad company in the performance of work to which he was wrongly assigned, and which, by his original contract, he had never agreed to do, he might recover for the defendant's negligence in thus imposing work upon him which he had not contracted to perform. The plaintiff was a brakeman on a passenger train under a written contract which bound him to no such duty, and was ordered to couple cars, to which he at first objected, but assented to doing it rather than lose his place. In so doing, he was injured by reason of his inexperience.

It would seem to have been held that the case was to be decided by determining whether the plaintiff had been guilty of negligence in obeying the order received. While a person who engages for a particular service agrees to encounter only the

dangers of that service, he may perhaps, in the first instance, assume that the order given him by his superior is warranted by the legitimate scope of his employment. If, so assuming, he is induced to perform duties which, by his contract, he is not bound to perform, and is thus injured, he should be able to maintain an action for the injury against the employer. But, in the case at bar, the plaintiff knew that the duty of aiding as fireman on the engine was not within his original contract as a laborer. He determined to perform it as a part of his engagement with the defendant, rather than lose his position as a laborer. In so doing, he must be held to have assumed its necessary risks. Such is the doctrine of *Woodley* v. *Metropolitan Railway*, 46 L. J. Exch. 521.

The plaintiff did this, it is true, rather than lose the position which he had, and which he desired to retain; but by so doing he engrafted this duty on his original contract, of which he made it a part. Morally to coerce a servant to an employment, the risks of which he does not wish to encounter, by threatening otherwise to deprive him of an employment he can readily and safely perform, may sometimes be harsh; but when one has assumed an employment, if an additional and more dangerous duty is added to his original labor, he may accept or refuse it. If he has an executory contract for the original service, he may refuse the additional and more dangerous service; and, if for that reason he is discharged, he may avail himself of his remedy on his contract. If he has no such contract, and knowingly, although unwillingly, accepts the additional and more dangerous employment, he accepts its incidental risks; and, while he may require of the employer to perform his duty, he cannot recover for an injury which occurs only from his own inexperience. The employer is not necessarily unjust, because he wishes in his employ a servant who can from time to time relieve a skilled workman, while his ordinary duties will be those of a mere laborer. It must certainly be his right to engage a servant who, while his ordinary duties will be simple and expose him to no danger, is willing, as a part of his service, from time to time to assume duties which, in order to be safely performed, require a higher degree of skill, and which expose him to a certain degree of danger.

In the view we have taken, we have not deemed it necessary to consider whether, in preparing to leave the engine to light the pipe of the engineer, the plaintiff could be held to be engaged in the performance of any duty due to or demanded by the defendant.                           *Exceptions overruled.*