Dougherty vs. West Superior Iron & Steel Co.

DOUGHERTY, Respondent, vs. WEST SUPERIOR IRON & STEEL COMPANY, Appellant.

*September 11 — October 2, 1894.*

*Master and servant: Personal injury: Contributory negligence: Court and jury: Assumption of risk: Command of foreman.*

1. In an action for personal injuries, where contributory negligence was alleged in the answer and the question was largely one of inference from the facts in evidence, the failure to submit that question to the jury was a material error.

2. Plaintiff, an employee of defendant, was injured while making cores to be used in casting iron pipe, by having his hand caught in hay which he was putting upon a revolving spindle driven by steam. Upon the evidence — showing, among other things, that he was twenty-eight years old, and was familiar with the way in which the work was done, and had worked for the defendant about fifteen months in making cores upon a machine run by hand; that the velocity of the spindle driven by steam was not materially greater than that of those turned by hand; and that the danger of having his hand caught was obvious — it is *held* that such injury was one of the ordinary risks of the employment assumed by the plaintiff, and hence that he cannot recover for the injury.

3. The fact that plaintiff had objected to working on the spindle driven by steam, and had done so only because told by defendant's foreman to "go there or get out," does not obviate the objection to a recovery, founded on plaintiff's assumption of the risk.

APPEAL from the Circuit Court for *Douglas* County.

This action was brought by the plaintiff to recover damages sustained by him while in the defendant's employ, in and about its steel works, in making cores to be used in casting iron water pipes. The claim in the complaint, in substance, is that he was employed to work in making special cores by hand power, and that Burns, the manager and foreman of said works, and having power and authority over the defendant's employees to hire and discharge them at pleasure, negligently and carelessly commanded him to work at a machine for making cores, run by steam

power, which was dangerous and unsafe in that the party working on it was liable to have his hands caught by hay which he was obliged to feed and hold so that it might be wound around a spindle revolving with great velocity, and thereby be broken; that Burns knew the dangerous character of the machine, and carelessly and negligently failed and neglected to inform the plaintiff thereof, though Burns knew the danger and appreciated the risk to which he exposed the plaintiff; that it was a more dangerous machine than the one on which he had been employed, and from which he was taken; that the plaintiff was ignorant of the dangerous character of the machine, and inexperienced at that class of work, and did not know or appreciate the danger or risk incident thereto; that he went to work as directed, and after working about two hours, and while in the exercise of due care, and without any fault or negligence on his part, his right hand was caught in the machine and wound around the spindle, and both bones in his forearm were broken, etc., to his damage. The defendant denied most of the allegations of the complaint, and alleged that the plaintiff was injured by reason of his careless and negligent conduct, and without fault, carelessness, or negligence on the part of the defendant.

It appeared at the trial that the plaintiff, after working about the defendant's works four or five months, was put to work making special cores about October, 1890. He had to "hay" the iron spindles, which were about four feet long, and the cores were of four, six, eight, and ten inches in diameter. The spindles were placed on iron trestles set at each end, and were turned by hand by means of a crank on one end, and he put the hay on while they were in motion. For anything over six inches the hay was put on in ropes. The one "haying" the spindle took the hay between his legs, and put it on, going right along with it the length of it, while the man was turning the spindle. Burns,

defendant's foreman, told him he wanted him to go and
work with Adams on the end of the six-inch gang, where
the spindles were made to revolve by steam power, in the
building called the " core sheds," and they " roped " thirty
eight-inch spindles that morning, and commenced to " hay "
six-inch spindles.   He testified:   "I started to work on the
end of the spindle, and Adams in the middle of it, and I
got the hay around it when the spindle was going around.
I put the hay on, and put my hand out to get it bound
after it had gone around, and it caught my hand and drew
it right in and broke my hand in two places.   Burns did
not give me any instruction in reference to it,— how to
work it.   I didn't know while working at that machine
that it was dangerous;  didn't know that my hand was
liable to be caught and drawn in by the hay while the
spindle was revolving;  wasn't aware nor did I appreciate
any danger while working at that machine, nor at any
other time.   I objected to going to work on the machine
when he ordered me to do so;  told the foreman I didn't
understand the work and I thought it was too heavy for
me.   We had to carry the six-inch spindles and handle the
mud, and I thought it was too heavy for me, and I told
him I thought I couldn't do the work.   He said to me,
' Either go there or get out.'   The spindle doesn't come in
contact with any other object.   You keep your hand on
top to keep the hay on until it catches, and go right along
and put on a little at a time until you get it covered.
After the hay catches there is a certain impetus.   As the
spindle turns around you get the hay on it.   There is a
' strike,' which is a board where you put the mud on.   It
is the same kind of a ' strike' used in making special cores.
I know of the machine used in making special cores.   It is
not the same kind of machinery that I was working on the
day I was injured, but it is the same in shape."   It was
shown that the board called a " strike " was supported by

the trestles on which the spindle rested, and was on the opposite side from where the man stood while "haying" the spindles for six-inch cores, and was used to put mud on the cores after they had been properly "hayed."

The plaintiff, when injured, was twenty-eight years of age, and had worked at a. foundry in New Jersey seventeen months, where he testified that they made a vast amount of pipe in the same way as in the defendant's plant; and he worked at making and "haying" special cores about fifteen months before he was hurt, March 18, 1892, on a machine turned by hand; and that they made cores on the spindles run by steam about the same way they made special cores. The spindles revolve in the same general way as when run by hand, only faster, that was all. In making cores by hand he had to stop until he would get the hay wound around the spindle and fastened, and then would tell the man that turned it to go ahead. "When I got hurt I put the hay around the spindle, and it had caught and was revolving quite rapidly, and I was distributing the hay. My hand got caught in the hay, and it drew my hand over and down to the 'strike.' The left hand was on top of the spindle, and the right under it. My hand was drawn in from underneath. My arm was broken before it came to the 'strike.' I knew that the spindle was revolving at the time." He further testified that in "roping" cores that morning he put the rope on the spindle while in motion, and the rope was put on in the same general way the hay was; that he did not then know whether it was safer to fasten the hay before the spindle started or not, and he had not worked in the building before that morning where the spindles were run by steam.

Evidence was given on the part of the plaintiff showing that no instructions were given him as to how to do the work; that when the spindle is turned by hand the operator can call to the one who turns, and stop it, if he gets

his fingers caught; that when turned by steam it is stopped
by treadles on the side where the "strike" is, but in "hay-
ing" six-inch cores he stands where there are no treadles
within reach with which to stop it; that there was nothing
wrong about the machine; that when run by steam the
spindles ran sometimes faster and sometimes slower than
when run by hand; that in using steam power there is a
slow movement and a fast movement, the slow movement
being uniform, and the fast nearly so; and that there are
times when the movement by hand is faster than the fast
movement by steam, but it would not hold out so long.

After the plaintiff rested the defendant moved for a non-
suit, which was denied. At the close of the evidence the
defendant asked the court to direct a verdict in its favor,
but this was refused. In answer to questions submitted
the jury found that the plaintiff did not have sufficient ex-
perience in the kind of employment he was engaged in
when injured to enable him, by the exercise of ordinary
care and diligence, to know and appreciate the dangers in-
cident thereto; that the accident was the result of the usual
and ordinary risks thereof; that he did not comprehend
them, and did not have reasonable means of knowledge
thereof; that there was a want of ordinary care on defend-
ant's part in setting him at work without informing him of
the risk incident to such work; that this was the proximate
cause of the accident; and that there was no want of or-
dinary care on the *defendant's* part that contributed to
produce the injury he received. No instructions were
given to the jury on the subject of contributory negligence
on the part of the plaintiff, but there was an instruction
given, probably intended for that purpose, but it was ren-
dered of no effect by the use of the word "defendant" for
that of "plaintiff," as in the last part of the special ver-
dict. After the jury had been discharged the court re-
quested defendant's attorneys to consent to the reassembling

of the jury and the submission of the question of contrib-utory negligence, but consent was refused. The motion for a new trial was denied, and the plaintiff had judgment for the damages awarded, $10,000, from which the defend-ant appealed.

For the appellant there was a brief by *Ross, Dwyer & Hanitch*, and oral argument by *W. D. Dwyer*.

*John Brennan*, for the respondent.

PINNEY, J.   1. The defendant insisted by its answer that the plaintiff's injury was caused by negligence on his part contributing to the result, and as the question of negligence on the part of either party to such actions as the present is often, as in this case, largely one of inference from the facts in evidence, the court should, we think, have submit-ted to the jury the question whether the plaintiff was guilty of negligence on his part contributing to the injury of which he complains. That the jury were not instructed on this point, and that there was no finding upon it, seems to have been the result of inadvertence; but the absence of such a finding is an error, in the state of the record be-fore us, that is fatal to the judgment and renders its reversal necessary.

2. The case was fully argued on the merits, and as it is probable that the evidence on another trial will not be ma-terially different from that now presented, it is manifestly proper to consider the question whether the case should have been submitted to the jury at all.   It is perfectly ob-vious, as found by the jury, "that the accident was the result of the usual and ordinary risks of the employment he was engaged in," and equally so that in the exercise of common sense and ordinary prudence he must have known and appreciated the risk of the employment, and therefore must be held to have assumed such risk upon entering upon the work in which he was engaged when injured.   He was

at the time twenty-eight years of age, and we must assume
that he was a person of ordinary intelligence; and it ap-
pears that he was familiar with the manner in which the
work was performed, having observed it for a considerable
time in a like manufacturing plant in New Jersey, where
he says the work was performed as in the defendant's plant.
He had, besides, worked at making cores for sixteen months
or more for defendant where the spindles were turned by
hand, and had observed somewhat the way in which they
were made when turned by steam. He does not claim
that he was ignorant on this subject. It is simply pre-
posterous and incredible that, with his knowledge and
experience, he did not know that his hand was liable to be
caught and drawn in by the hay he was feeding while the
spindle was revolving. The facts open to the most casual
inspection were sufficient to admonish a person of ordi-
nary intelligence of such danger. It may be that he
meant to convey the idea that his hand was *unexpect-
edly* caught in the hay and drawn in, whereby it was
injured, but that fact of itself would afford no ground of
liability on the part of the defendant. It is not claimed
that the so-called machine was defective in any respect,
or was imperfectly constructed. On the contrary, it was
a very simple device, and there was nothing complicated,
obscure, or concealed in respect to its use or operation.
Whatever of risk or danger there was in the work he
was ordered to do at the time was open and plain to
the most ordinary comprehension, and he was a man of
mature years, with the knowledge and experience stated.
There was no reason on the part of the defendant to sup-
pose that he needed either admonition or instruction as to
the danger or the method of doing his work, and there
was no claim in the evidence, or made at the argument,
that any particular or special instruction was either neces-
sary or usual. We are clear that there is no evidence

Dougherty vs. West Superior Iron & Steel Co.

whatever justifying any imputation of negligence to the defendant in this respect, or for setting him at work on a spindle driven by steam power, the velocity of which it appears was not very materially greater than when turned by hand, and in respect to which he had had an extended practical experience. If any risk or danger there was in the employment, it was plain and open to observation upon the most casual inspection. He cannot, therefore, now be heard to say that he was not aware of, and did not appreciate, the danger. It certainly was not necessary to tell him that, if he allowed his hand to be caught in the hay just where it was being wound around the spindle, there was danger that it would be seriously injured. Common sense would suggest that from the condition of affairs open to his observation. *Crowley v. Pacific Mills*, 148 Mass. 228; *Linch v. Sagamore Mfg. Co.* 143 Mass. 206; *Russell v. Tillotson*, 140 Mass. 201; *Kean v. Detroit C. & B. R. Mills*, 66 Mich. 277. We must hold, therefore, upon the facts of the case and the well-settled rule of law applicable to them, that the injury the plaintiff received was from one of the ordinary risks of the work he was engaged in, and that upon entering upon the work by direction of the foreman and under the circumstances stated, he assumed the risk, and is therefore not entitled, upon the facts shown, to recover in this action. The cases in this court are too numerous and too plain to justify further discussion. *Burnell v. West Side R. Co.* 87 Wis. 387; *Corcoran v. Milwaukee G. L. Co.* 81 Wis. 191; *Showalter v. Fairbanks, Morse & Co., post*, p. 376; *Naylor v. C. & N. W. R. Co.* 53 Wis. 661; *Johnson v. Ashland Water Co.* 77 Wis. 51; *Paule v. Florence M. Co.* 80 Wis. 350; *Goltz v. M., L. S. & W. R. Co.* 76 Wis. 136; *Haley v. Jump River L. Co.* 81 Wis. 421; *Cole v. C. & N. W. R. Co.* 71 Wis. 114.

The fact that Burns, the foreman, told the plaintiff, when he objected to working on the spindles driven by steam,

Mills vs. The National Fire Ins. Co.

"Either go there or get out," does not obviate the objection to the plaintiff's right to recover. If an employee of full age and ordinary intelligence, upon being required by his employer to perform duties more dangerous or complicated than those embraced in his original hiring, undertakes the same, knowing their dangerous character, although unwillingly, from fear of losing his employment, and is injured by reason of his ignorance and inexperience, he cannot maintain an action therefor against his employer. *Leary v. B. & A. R. Co.* 139 Mass. 580; *Bradshaw's Adm'r v. L. & N. R. Co.* (Ky.) 21 S. W. Rep. 346; *Woodley v. Metropolitan R. Co.* L. J. 46 Exch. Div. 521. Whatever danger or peril there was in the work he was ordered to do was, as already observed, plain and obvious. His objection to doing the work was not that it was dangerous, but that he did not understand it, and particularly that he was not strong enough to handle the cores. But, if he saw and understood that the work was of a dangerous character, it was his duty to decline the employment.

For these reasons it is plain that the recovery cannot be sustained.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.