## BARR CAR CO. v. CHICAGO & N. W. RY. CO.

### (Circuit Court of Appeals, Seventh Circuit. October 1, 1901.)

### No. 767.

1. PATENTS—CONFLICTING CLAIMS TO INVENTION—EVIDENCE.

The presumption arising from the issuance of a patent that the patentee was the inventor of what is therein described is overcome by proof that he had previously prepared the specification, and signed as a witness an application by another for a patent for the same device; and the duty is cast upon him to prove that he, and not the original applicant, was in fact the inventor.

2. SAME—FAILURE TO ASSERT CLAIM—DURESS.

The relations between an employé of a railroad company and the head of the department in which he works are not of such a confidential nature as to sustain a claim of the subordinate that his failure to claim as his own an invention for which his superior had, with his knowledge, applied for a patent in his own name, was due to compulsion or duress, because of his fear that he would lose his position, where no actual duress is charged; and his claim to the invention cannot be sustained upon his own testimony alone, which is directly contradicted, and is inconsistent with his acts, in not asserting any claim thereto for 15 months after he had severed all relations with the other claimant.

3. SAME—ORE CARS.

The Barr patent, No. 349,134, for a coal and ore car, held void on the ground that the patentee was not the original inventor.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

This suit was brought by the appellant, as the assignee of Lester J. Barr, for the alleged infringement by the appellee of letters patent of the United States No. 349,134, issued to Lester J. Barr September 14, 1886, for a "Coal and Ore Car." The defendant below pleaded (a) want of novelty; (b) that Barr was not the inventor; (c) laches. The court below, in an opinion in the record, but otherwise unreported, held that the alleged invention involved no patentable novelty; that one George H. White, and not Lester J. Barr, was the original inventor; and a decree was thereupon entered dismissing the bill for want of equity. In view of the conclusion reached upon the appeal, it is only necessary to state the facts disclosed by the record with respect to the question who was the original inventor of the claimed improvement. George H. White entered the service of the Chicago & Northwestern Railway Company in 1872, acting as foreman and assistant to the master mechanic of the Peninsula Division of that railway, being in the ore district of the Northern Peninsula of Michigan. He so continued until the year 1875, when he was appointed master mechanic of the Peninsula Division, which position he filled until the spring of the year 1883, when he left the service of that railway and went to Duluth to take charge, as superintendent, of the Duluth & Iron Range Railway, which position he held until 1887. He testifies that in the year 1873 the Chicago & Northwestern Railway Company had two eight-wheeled, double-truck, double-hopper ore cars constructed at the Fond du Lac shop, which were received by him at Escanaba and placed in the ore service between Escanaba and Negaune. These cars, it was found, were required to be set or spotted twice in order to dump both hoppers, and, as the opening of the hoppers came over the two

inner, axles of the truck, the ore bruised and cut the axle. This led, he states, to his consideration of the question, and in 1881 he conceived the idea of a single-hopper, double-drop bottom car, and in 1882 he obtained permission to construct two of them, which permission was afterwards countermanded by Layng, the general superintendent, it not being deemed advisable to introduce a larger car into the service at that time, as such change would require alterations in the docks and pockets at the mines. On February 7, 1883, White verified an application for a patent for his invention, which was filed in the patent office February 12, 1883. The invention described is conceded to be identical with the invention claimed in the Barr patent, which is the subject of this suit. Barr was born in the year 1853 at Erie, Pa., where his father manufactured stoves, agricultural implements, and machinery. From the age of nine to that of nineteen, he spent his summer vacations from school in his father's foundry. Having graduated from the high school, in the summer of 1872 he commenced to learn the carpenter trade at Erie, and in September, 1874, entered Lehigh University, taking a course of civil engineering, where he remained until 1877; then became a teacher in the Erie high school for one year, and from April, 1878, until August, 1879, was engaged in the lumber business at Menominee, Mich., and thereafter, until December, 1879, was employed as a carpenter at Ishpeming. Mich. On December 2, 1879, he entered the service of the Chicago & Northwestern Railway Company at Escanaba as a carpenter and subforeman in the construction of coal trestles and sheds in the Escanaba yard. In the summer of that year he was foreman of a gang of men repairing bridges and buildings along the line of the Peninsula Division of the railway, and in the autumn of 1880 he entered the office of George H. White, the master mechanic, as a draftsman, having, as he said, general knowledge of car construction, but not enough to make complete working drawings; and he obtained a copy of the Master Car Builders' Dictionary, issued by the master car builders' association in 1879, to familiarize himself with the business. During the winter of 1880-81 he was assistant foreman in the construction of an ore dock at Escanaba. In the spring of 1881 he returned to his work as draftsman in White's office, remaining there until April, 1882. On April 4, 1882, he was married, and thereupon commenced the business of building and contracting in Escanaba upon his own account, and after three months' experience therein, becoming involved, he returned to his position in the office of White as draftsman, remaining there until May, 1883, when White became superintendent of the Duluth & Iron Range Railroad, taking Barr with him to Duluth. He remained in the service under White until September 1, 1884, when he entered the service of the Milwaukee, Lake Shore & Western Railroad Company as superintendent of construction of certain docks at Ashland, and upon their completion took charge of their operation until the summer of 1886, when he entered upon the superintendence of the construction of ore docks for the Penokee Railroad, in which service he remained until the summer of 1887, from which time until December, 1889, he was "interested in the Gogebic iron boom," where he lost all the earnings of the preceding few years, when he entered the service of the government in the general post office at Chicago as draftsman and topographer, where he is now employed. He claims that between the years 1880 and 1883 he conceived the idea of the patented car for which Mr. White filed an application for a patent. He prepared Mr. White's specifications and drawings, writing the specifications in his own hand, and signed both the specifications and drawings which had been executed by Mr. White and verified by him, as a witness to their execution. Neither prior to their execution nor thereafter until he left service under White, September 4, 1884, did he make any claim, to White or to any other person, that he was the inventor of the car in question, knowing all the time that Mr. White was—to use Barr's own language—"posing as its originator," and knowing that White was generally given the credit of contriving this ore car during the time that he (Barr) was employed under him. His application for the patent was filed January 16, 1886, at which time he was in the service of the Milwaukee, Lake Shore & Western Railroad Company. No witness is produced who testifies that Barr ever claimed to be the in-

ventor of this car until his application for a patent, although one or two witnesses testify that he showed them the drawings of the car which were in the office of Mr. White. Several witnesses testify to the public claim of Mr. White to this invention at the time of his application for a patent, and at least one testifies to conversation with White concerning the car and its claimed invention by White before the time that Barr entered into service under White. Barr gives as an excuse for his silence that by reason of his unfortunate business adventure just after his marriage, and during the spring and summer of 1882, he was in debt in the amount of $1,500,—$900 upon his home, and $600 upon contracts which he had undertaken just previous to leaving the service of the Chicago & Northwestern Railway Company under Mr. White. In May, 1883, he accompanied Mr. White to Duluth in the service of the Duluth & Iron Range Railroad Company. Barr sold his house for $1,100, the purchaser assuming the amount of indebtedness upon it. The balance of his indebtedness of $600 he subsequently paid off. He states upon his return to Mr. White's office in the summer of 1882 he obtained his consent to an arrangement by which he could give orders on his salary each month to certain of his creditors, because others of his creditors were pressing him unreasonably, and this was done to enable him to avoid infraction of a rule of the railway company "that two garnishees of an employé's salary would mean his discharge." Because of this fact he states that he did not suggest to White at the time that he signed as a witness White's specifications and drawings that he (Barr) was the real inventor; but he gives no reason for his silence after May, 1883, when he left the employment of the railway company. The claim at the end of the specifications of the White application, as drawn and as amended, was disallowed, and finally a claim was allowed in such narrow terms that White testifies he thought it not worth while to pay the expense of the patent. The claims of the invention asserted and as amended by Barr were likewise disallowed by the patent office, and finally allowed in the restricted language in which they now appear.

John W. Munday, for appellant.
George S. Payson and Lloyd W. Bowers, for appellee.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

JENKINS, Circuit Judge, after the foregoing statement of the case, delivered the opinion of the court.

It is doubtless true that the letters patent to Barr afford a prima facie presumption that he is the original and first inventor of what is therein described as his improvement, and that the burden to establish the contrary rests upon the defendant below, who asserted the fact. Agawan Woolen Co. v. Jordan, 7 Wall. 597, 19 L. Ed. 177; Stimpson v. Woodman, 10 Wall. 122, 19 L. Ed. 866. But that prima facie presumption may be rebutted so as to shift upon the patentee the duty of overcoming the probative force of the evidence produced by his opponent, and this prima facie presumption, we think, is, in the first instance at least, fully met and overcome by the fact that Barr several years before the date of his application prepared specifications and drawings for an application for a patent for the same device then claimed to have been invented by White, and which plans and specifications he signed as a witness for White. If that act is to stand as of probative force, Barr is convicted out of his own mouth, and cannot be held to be the original inventor. He seeks to avoid the effect of this act under the claim that what he then did was done under some sort of compulsion or duress. He does not claim any active compulsion by White, but that he then acted under fear that, if he

claimed his own, White would procure his discharge from the employment of the railroad company. We are cited to many cases which avoid things done under compulsion and duress, and where dealings between persons in confidential relation—as, for example, lawyer and client, trustee and cestui que trust, guardian and ward, physician and patient, husband and wife—are watched with extreme jealousy, and are avoided if any duress or undue influence appear. Lyon v. Home, L. R. 6 Eq. 674; Casbourne v. Barsham, 2 Beav. 76; Haydock's Ex'rs v. Haydock, 33 N. J. Eq. 501; Taylor v. Taylor, 8 How. 183, 12 L. Ed. 1040; Munson v. Carter, 19 Neb. 293, 27 N. W. 208. A multitude of cases could be assembled to the same purport, and the law of them is undoubted. The present case cannot, however, be held to fall within the principle of those decisions. Here there was no such confidential relation between White and Barr. He was a clerk or draftsman in the service of the railway company under White. He was under no more dependence upon White than is any clerk in the service of a railway company in dependence upon the head of the particular department in which he serves. Both were free men. White, with the consent of the railway company, could discharge Barr at any time, and Barr was at all times at liberty to leave his employment. It would be carrying the rule a great way and to a dangerous extent to hold that any one occupying a subordinate position is not to be bound by his acts, as between himself and his superior, because of a supposed fear upon the part of the clerk that, should he protest, he might lose his employment. See upon this subject Leary v. Railroad Co., 139 Mass. 580, 2 N. E. 115, 52 Am. Rep. 733; Dougherty v. Steel Co., 88 Wis. 343, 60 N. W. 274; Reed v. Stockmeyer, 34 U. S. App. 727, 741, 20 C. C. A. 381, 74 Fed. 186. The contention that Barr was acting under some sort of duress or compulsion arising from his fear, and not from any act of White, is rendered of still less avail by the fact that within two or three months after signing these specifications he voluntarily left the service of that railway company and accompanied White to another field of labor, and for fifteen months after he left service under Mr. White and entered the employment of another railway company never suggested to any one, by act or deed or word, that he was the inventor of this car. His conduct under the circumstances, if he was in fact, or deemed himself in fact to be, the inventor of this car, is inexplicable, and runs counter to the usual conduct of responsible human beings. He stands alone in the assertion of his alleged invention. His testimony is in sharp conflict with that of White, who claims also to be the inventor, and whose evidence is fortified by the surrounding circumstances, and greatly strengthened by the action of Barr. In the light of these circumstances, we are unable, judging of the case in the light of the usual conduct of men, to give credit to his testimony thus contradicted directly by circumstances and by his own act. As was well said by the supreme court in Atlantic Works v. Brady, 107 U. S. 192, 203, 2 Sup. Ct. 225, 234, 27 L. Ed. 438, 442,—a case much like the present:

"Interested as he is in the result of the suit, his own testimony cannot be allowed to prevail against a course of conduct so utterly at variance

with it. It may be true; but we cannot give it effect against what he himself did, and did not do, without disregarding the ordinary laws that govern human conduct."

The decree is affirmed.

WOODS, Circuit Judge, sat at the hearing of this case, and concurred in the result, but departed this life before the preparation of this opinion.