BROTZKI, Respondent, vs. WISCONSIN GRANITE COMPANY,
Appellant.

*March 15—April 5, 1910.*

*Master and servant: Injury to blaster by premature explosion: As-
sumption of risk: Obvious dangers: Duty to give warning.*

1. A servant assumes the risks ordinarily incident to his employ-
ment which are so obvious that he is presumed to know of their
existence.

2. A master is not bound to give warning of open and obvious dan-
gers to a servant of ordinary intelligence, knowledge, and ex-
perience.

3. An employee of ordinary intelligence who had worked in a gran-
ite quarry for a number of years as a driller, for two years as
helper to a blaster, and for one year as a blaster, must be pre-
sumed to have had knowledge of the open and obvious dangers
incident to the operation of blasting as it was customarily per-
formed, whether arising from the nature of the business, the
particular manner in which it was conducted, or the use of de-
fective or insufficient appliances.

4. Such an experienced blaster presumably knew the nature and
condition of the blast holes as to roughness of the sides and
sharp projections of the rocks in the holes, and was chargeable
with knowledge that his use of a steel gauge rod in loading the
holes might produce a spark by contact with the rock and so
cause a premature explosion.

5. The fact that such blaster had no knowledge of the process and
dangers of blasting except what he had acquired while at work
in the quarry does not relieve him from the consequences of his
assumption of such risk of premature explosion, it being a risk
which he must be held to have apprehended and understood.

APPEAL from a judgment of the circuit court for Green
Lake county: CHESTER A. FOWLER, Circuit Judge. *Re-
versed.*

The plaintiff brings this action to recover for personal in-
juries received on May 28, 1908, by an explosion of blasting
powder in defendant's granite quarry.

The defendant owns and operates several granite stone

quarries, and the injuries were received in one of these quarries at Berlin, Wisconsin. There is a blaster for each of the three pits of this quarry, and the plaintiff was the blaster in one of them at the time of the injury.

Plaintiff was thirty-six years of age. About fifteen years before he received his injuries he had taken up his residence in Berlin. Thereafter he worked on a farm for about a year and then went to work for the defendant. At times he had done other work, but at the time he received his injuries he had worked for the defendant about nine years altogether. He started work as a driller and worked in other quarries as such, and had done a little blasting in one of these quarries. For one year prior to the time he was injured the plaintiff had been the blaster in his pit, and for two years or more prior thereto he had been the blaster's helper. During this time, as helper, he had assisted in loading and firing blasts, and he thus became familiar with the way in which the blaster performed his work. When the blaster was away he did the blasting.

Preparatory to the blasting proper, holes are drilled into the rock from eighteen inches to fourteen feet or more in depth. In drilling a deep hole, a kit of drills, eight or nine in number, is used. As the hole becomes deeper, each succeeding drill is a little smaller than the preceding one by about one sixteenth of an inch, and a hole twelve or fourteen feet deep will be about three inches in diameter at the top and about an inch and one-half at the bottom. The blaster examines the hole which has been drilled, using a steel rod about half an inch thick and of a length depending on the depth of the hole. One end of this rod is bent into a ring; the other end is flattened and notched on the end. If the blaster finds water in the hole he removes it with a pump if necessary. If only a small quantity is in the hole he removes it by means of a rag which is put through the ring at one end of the steel rod and acts as a mop when the rod is thrust into

the hole. When the hole has been dried the blaster pours a handful or two of sand into the hole to absorb any water remaining at the bottom and to keep the powder dry when poured into the hole. If several charges are exploded in the same hole, the layer of sand poured into the hole by the blaster is designed to cover any smoldering damp powder which may be left in the hole and thus prevent the premature explosion of a subsequent charge. The notched end of the steel rod is used to remove projections or irregularities existing in the hole or which may be caused by the discharge of a blast.

The blaster then inserts a measuring rod, which rests upon the sand at the bottom of the hole; a chalk mark is made upon the rod at the surface level; and the top end of the rod is held in the hand of the blaster while powder is poured into the hole with the free hand. As the powder runs into the hole the blaster gradually lifts the rod and moves it about, thus determining whether the powder is resting on the bottom of the hole and rising therein, or whether it is running away through crevices, and also ascertaining, from the rising chalk mark on the rod above the surface, the height of the powder in the hole. When sufficient powder has been placed in the hole the blaster inserts an exploder. The exploder, or loaded cartridge, is about one quarter of an inch in diameter and a little more than an inch long. Two wires are connected with the exploder and these are connected with the wires of an exploding battery. The exploder is placed in the notched end of the measuring rod and held in place by the blaster keeping taut the two wires, one on either side of the measuring rod. The rod is then thrust down the hole and the exploder thus placed upon the surface of the powder. After the exploder is in its proper position in the hole sufficient powder is poured into the hole to cover the exploder. Sand and dirt are then run and packed into the hole, and the blaster and his helper then go to the battery, which is sta-

tioned at a safe distance from the hole, turn on the electric current, and the explosion results. The loading and exploding are repeated until the rock is dislodged or broken loose. It is the duty of the helper to stand by and hand the blaster the tools and materials as needed.

The plaintiff, as stated, had worked in the quarry of the defendant for about nine years. He had worked as blaster for the year immediately preceding the time he received his injuries and for two years theretofore as helper to the blaster. As such helper he had observed the blaster at work and had become familiar with the blaster's way of performing his work. He, as helper, handed to the blaster the steel rod for gauging, probing, and smoothing the hole, and the powder and the exploder, as called for, and, when told so to do, turned on the current at the battery, or lighted the fuse when the blast was so exploded. The blasting was usually done during the noon hour or after the other workmen had quit work in the quarry and when the blaster and his helper were alone. The helper received no instructions as to the process except such as he received and learned by doing the work and from observation. He was given no specific warning as to the dangers incident to blasting and knew of them only as his experience, knowledge, and observation informed him.

The superintendent requested the plaintiff to take charge of the blasting when the blaster with whom he had been working as helper quit work, and upon plaintiff expressing doubt of his fitness to handle the work he was assured by the superintendent that he knew all about the work and that the knowledge he had obtained from his experience and observation of the former blaster qualified him to do the work all right. In undertaking the work the plaintiff did the work as it had been done by the former blaster and he used the same tools.

Plaintiff was injured shortly after 6 o'clock in the evening. The hole at which he was working was about twelve feet

eight inches deep, a trifle slanting. He had pumped the water out of the hole and discharged a blast. The charge blew out, and no rock was loosened so that it could be used for quarrying purposes, and the plaintiff went back to the hole to recharge it. He put the steel rod down into the hole to probe it, and on withdrawing it found that it was nice and dry. He threw a handful or two of sand into the hole and then took from his helper a cup of powder to pour into the hole. He held the steel gauge rod lightly in one hand, resting it upon the powder in the hole. He poured about three quarters of the powder into the hole, the helper standing back of him ready with the exploder. While thus gauging the charge the plaintiff felt the rod catch. He turned and lifted the rod, which seemed a little tight, and when he so lifted and turned it the powder exploded and the burning powder and gas shot up from the hole and injured him. He testifies that he held this rod by gripping it between his thumb and two fingers, and that he gave it a slight lift and a turn just before the explosion. Plaintiff's hand was burned, his upper lip was torn away, his face was burned, and he lost the sight of both eyes. His nostrils were injured, and in healing have become drawn together so that plaintiff has difficulty in breathing and is often compelled to insert a tube to enable him to breathe through them. His face and hands are scarred.

Plaintiff alleges that he was ignorant of the dangers incident to the use of this steel gauge rod in the operation of blasting; that he had not been instructed as to the safe way of performing the work; that he had not been warned that sparks were likely to be emitted if a steel gauge rod was used in contact with granite; and that the explosion resulted from a spark which was caused by the friction of the hard steel against the rock on the side of the hole. It is claimed that the explosion would not have occurred if the plaintiff had

been furnished with a wooden or copper rod with which to place and gauge the powder in the hole.

The evidence as to whether it was customary to use a wooden or soft metal rod for placing the powder and exploder in position was in conflict. There was evidence that the explosion might be due to the friction upon the powder between the rod and the rocky side of the hole, that it might have been caused by smoldering damp powder in the hole, or because the hole was overheated; and there was also evidence that an explosion due to the friction upon the powder between the side of the hole and the rod might have occurred even if a wooden rod or one of soft metal were used.

The court denied a motion for judgment in defendant's favor. The jury returned a verdict finding that the explosion was set off by a spark caused by the friction of the steel rod against the rock; that the steel rod was not a reasonably safe gauge to use in determining the height of the powder in the hole; that it was defendant's duty to warn the plaintiff of the danger incident to the use of the steel rod as a gauge; that the failure to furnish a reasonably safe gauge and the defendant's failure to warn the plaintiff of this danger were the proximate cause of the plaintiff's injury; and that the plaintiff was not guilty of contributory. negligence. The jury found the amount of damages to be awarded. This is an appeal from the judgment on the verdict.

For the appellant there were briefs by *Stewart & McDonald,* and oral argument by *F. C. Stewart.*

For the respondent there was a brief by *W. E. Cavanaugh* and *Bouck & Hilton,* attorneys, and *John F. Kluwin,* of counsel, and oral argument by *Mr. Kluwin* and *Mr. Cavanaugh.*

SIEBECKER, J. From the above detailed statement of the case it is apparent that the defendant had always conducted

its quarry business, including the operation of blasting, in the manner in which it was being conducted at the time the plaintiff was injured by a premature explosion, and that it had always used steel gauge rods in loading the blast holes with powder, as was done by the plaintiff on this occasion. There is evidence tending to show that the use of such steel gauge rods is liable to cause sparks to be emitted through friction produced by contact of the steel rod with sharp projections of the rock on the sides or walls of the blast holes, and that this danger does not exist when wooden or copper gauge rods are used. The court awarded a recovery upon the ground that the steel gauge rod furnished by the defendant to plaintiff to do this blasting operation was not a reasonably safe appliance, and that the defendant was negligent in not warning the plaintiff of the dangers incident to so using such a rod in the performance of his duties. There is no controversy that the defendant had the legal right to use this steel gauge rod as it did in conducting its business of blasting, and that this in itself did not make it liable to the plaintiff, though this constituted negligence in the manner of conducting its business. The law is well established that a servant assumes the risks and dangers ordinarily incident to his employment if they are so obvious that the servant is presumed to know of their existence, and that the master is not required to warn a servant of ordinary intelligence, knowledge, and experience of such dangers. This rule is aptly stated in *Dahlke v. Ill. S. Co.* 100 Wis. 431, 76 N. W. 362, as follows:

"The duty to instruct does not go so far as to require the master to acquaint the employee with every possible danger to which he may be subjected in the course of his employment. The master has a right to assume that the servant will see and appreciate those dangers which are open and obvious to a person of ordinary comprehension."

*Dougherty v. West Superior I. & S. Co.* 88 Wis. 343, 60 N. W. 274; *Faber v. C. Reiss C. Co.* 124 Wis. 554, 102 N. W. 1049; *Rahles v. J. Thompson & Sons Mfg. Co.* 137 ,Wis. 506, 118 N. W. 350, 119 N. W. 289.

The rule applicable to a state of facts like those of the instant case is stated in another case as follows:

"The servant assumes the dangers of the employment to which he voluntarily and intelligently consents, and, while ordinarily he is to be subjected only to the hazards necessarily incident to his employment, if he knows that proper precautions have been neglected, and still knowingly consents to incur the risk to which he will be exposed thereby, his assent dispenses with the duty of the master to take such precautions." *Leary v. B. & A. R. Co.* 139 Mass. 580, 2 N. E. 115.

The inquiry, then, is: Did the plaintiff assume the risk from dangers incident to defendant's neglect in furnishing him with a steel gauge rod for performing the operation of blasting in the quarry? As above stated, this danger is alleged to arise from sparks produced by friction when the steel rod comes into contact with the rock on the sides of a blast hole. It appears that the plaintiff is a man of average intelligence, that he had worked in the quarry business for a number of years as a driller, and that he had worked two years as a helper to the blaster and for one year as blaster. Knowledge of and skill in blasting are shown to be acquired by observing how the work is done by the experts in the business, by helping them, by doing the work personally, and by observing the operation and the results of blasting. The plaintiff had had experience in all of these respects to the extent stated. We must therefore conclude that he was an expert and experienced blaster, and, as such an expert, he must be presumed to have had knowledge of such open and obvious dangers, incident to doing blasting, as such a skilled person of ordinary intelligence, knowledge, and experience

possesses, "whether they arise from the nature of the busi-
ness, the particular manner in which it is conducted, or the
use of defective or unsafe appliances." There is no evidence
tending to show that the plaintiff had not capacity to under-
stand the character of the dangers incident to the operation
of blasting, or that he did not comprehend and understand
the operation of the natural laws regarding the production
of sparks by friction through a contact of this steel rod and
the granite rock. These are the dangerous conditions of
which the plaintiff alleges that he had no knowledge and
which he claims were so hidden and concealed in their opera-
tion that he, as blaster, ought not to be held to have assumed
the risk of injury from them while performing his duties.
All the conditions surrounding the plaintiff at his work,
aside from the use of the steel rod, are those which accom-
pany and arise in the usual and ordinary method of doing
blasting in granite quarries and commonly attend the work,
and he must therefore be presumed to have had knowledge of
them. It therefore follows that the plaintiff presumably
knew the nature and condition of the blast holes as to rough-
ness and unevenness of the sides or of sharp projections of
the rocks in the walls, and, knowing them, he was, under the
circumstances, charged with the knowledge that his use of a
steel rod like the one used on this occasion might produce a
spark by contact with the rock. It thus appears that the
danger complained of is the result of known and obvious
conditions and the operation of natural laws. We do not
perceive how this can, under the surrounding conditions, be
said to be a secret and unknown danger which an intelligent
and experienced blaster does not comprehend. The very na-
ture of his expert information tends to impart this knowl-.
edge and thus inform him on this subject. It is probable
that such expert blasters have more knowledge concerning
the art and a better comprehension of such dangers as are
here complained of than the employer, who is held to a full

knowledge of the subject in the conduct of his business. We are constrained to hold, upon the facts proved and the rule of law applicable thereto, that the plaintiff's injuries resulted from risks and hazards which attended obvious and known dangers incident to the manner of conducting the blasting operations in which he was engaged. The fact that the plaintiff had no knowledge of the process and dangers of blasting except what he had acquired while in defendant's employ and at work in its quarry does not relieve him from the consequences of his assumption of this risk, since it was one which he, under the circumstances of the case, must be held to have comprehended and understood. *Dougherty v. West Superior I. & S. Co.* 88 Wis. 343, 60 N. W. 274; *Rahles v. J. Thompson & Sons Mfg. Co.* 137 Wis. 506, 118 N. W. 350, 119 N. W. 289; *Leary v. B. & A. R. Co.* 139 Mass. 580, 2 N. E. 115.

In this view of the case it is not necessary, for a final determination of the case, to consider other questions raised on this appeal. We will, however, add that after a careful examination of the evidence we are persuaded that the proof is insufficient to sustain the jury's answer to question 1 of the special verdict, finding that the explosion which injured the plaintiff was set off by a spark caused by friction of the steel rod against the rock in the walls of the blast hole. A discussion of the evidence on this point is not required in view of the conclusion that the plaintiff has no cause of action on the grounds above stated.

*By the Court.*—Judgment reversed, and the cause remanded to the trial court with directions to dismiss the complaint.

TIMLIN, J., dissents in part.