### CRAWFORD v. AMERICAN STEEL & WIRE CO.

(Circuit Court of Appeals, Second Circuit. April 6, 1903.)

No. 105.

1 ACCIDENT TO EMPLOYÉ—ASSUMPTION OF RISK—INSTRUCTION.

Plaintiff's intestate was employed by defendant to remove such of the sheets of iron constituting the roof of a building as were sound enough to be used on another building, the roof being convex in shape, except for a space in the center, he knowing the size of the sheets, and that if one gave way he would fall through, unless he resorted to some expedient for safety, and also knowing that some of the sheets were not in good condition, so that he could not fail to understand that snow might be an element of danger. *Held*, in an action for his death, a sheet having broken, and he having fallen through, that an instruction that, if no time was fixed as to when he should commence or finish the work, and snow was on the roof when he was employed, or fell after his employment, and he thereafter commenced the work without any direction, he assumed the risk from the presence of the snow, was proper, it not being necessary to qualify it by the condition, if he knew the presence of the snow was likely to increase the risk, as it was indisputable that he did know it.

2. SAME.

An instruction, in an action for death of one from falling through a sheet-iron roof, the sound sheets of which he was employed to remove, that the jury had a right to find, from the location of a rope hanging down through the place where he fell, and from the marks on his hands, that he went over the snow with a rope in his hands for the purpose of protecting himself from falling through the roof; and, if they so found, it was their duty to find he realized and appreciated the danger, and defendant was not chargeable with the consequence of his failure to maintain himself by means of the rope he thus relied on—is proper, it not being to the effect that the mere fact that an employé is aware he is entering on a dangerous undertaking implies his consent to assume the risks incident to it, but that when an employé appreciates the particular nature of the risk, and choses to encounter it with a certain appliance only, he assumes the risk of the insufficiency of the appliance.

3. SAME—DUTY OF MASTER—FURNISHING MEANS FOR WORK—INSTRUCTIONS.

The court having instructed in regard to the general duty of an employer towards an employé, an instruction, given with reference to the defense that the employé was aware of the risk and had himself selected the instrumentalities for doing it, that it was the duty of the em-

---

¶ 1. Assumption of risks incident to employment, see note to Deere & Co. v. Rock Island Plow Co., 28 C. C. A. 314.

ployer to furnish the employé with such instrumentalities as he called for, and that if he did not call for such means to the extent that would make his doing the work safe the fault was his, is proper.

**4. SAME—IMPLIED ASSUMPTION OF RISK.**

Where an employé is an adult of ordinary intelligence, he impliedly assumes all the ordinary risks incident to the employment—not only those known to him, but also those readily discernible; but not nonobvious or latent risks, in the absence of instruction or information in respect to them.

In Error to the Circuit Court of the United States for the Northern District of New York.

F. E. Smith, for plaintiff in error.
Richard L. Hand, for defendant in error.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error by the plaintiff in the court below to review a judgment entered upon the verdict of a jury. The action was brought by the administratrix of John Crawford to recover damages for the death of the intestate by the alleged negligence of the defendant.

The evidence at the trial showed that the intestate had been in the employ of the defendant at the Crown Point Furnace from October, 1899, until shortly before the day in March, 1900, upon which he met his death, doing general work assisting the other mechanics as a handy man, including the patching of the roofs of the buildings. He was killed by falling through the roof of casting house No. 1, where he had been removing the sheets of corrugated iron covering the roof. In December, 1899, the roof was in a dilapidated condition, some of the sheets being gone, and some rusted and full of holes, and was then partly repaired and the missing sheets replaced. In March, 1900, the defendant concluded to remove from the roof such of the sheets as were in good condition, and replace them upon the roof of another building which needed repairing. For a short time previous to the day of the accident, Crawford had not been in the employ of the defendant. On Friday, March 16th, the superintendent of the defendant, at the suggestion of the foreman, sent for Crawford, with a view of employing him to do the work of removing and replacing the sheets. There was a discrepancy upon the trial between the testimony of the superintendent and that of the foreman as to the purport of the interview which ensued between them and Crawford. According to the testimony of the superintendent, he told Crawford that the roof was bad, and that it could not be touched until the snow then on it was gone; that he could go over and examine it, and report whether he desired the job, and give an estimate of the time it would take, the equipment of tools, clamps, and anything needed for his safety; that Crawford examined the building and reported, telling him he was willing to assume the risk, and giving him a written memorandum of the safety devices he required; and that he then gave him an order for the appliances, including a rope,

¶ 4. See Master and Servant, vol. 34, Cent. Dig. §§ 610, 612.

block and tackle, ladder, and belt rings. The foreman testified that he sent for Crawford, told him what was to be done, that only the sheets were to be taken off that were in good condition, and asked him if he had ever done any of that work before, and, upon his replying that he had, asked him if he would do the job, and he said he would; that he told him what the wages would be, and that he could have all the ropes, ladders, and planks that he wanted; that no specified time was fixed when the work was to begin, but Crawford said he would start doing it the next morning. The evidence was conflicting as to whether the condition of the roof could be seen from the inside of the building or not. In accepting the job, Crawford asked that a man named Woods be assigned to assist him. The equipment which he asked for was supplied him, and Woods was detailed to assist him. When the roof had been patched previously, a plank staging had been constructed underneath for the safety of the men in the event of their breaking through. There was some discrepancy in the testimony as to whether Crawford began work on the following Saturday, or on Monday. During Saturday considerable snow fell upon the roof. The accident happened late in the afternoon on Monday. Woods left the roof about half past 5, and was gone about 20 minutes. When he returned he found Crawford's body lying on the floor of the casting house, about 40 feet below a hole in the roof. There was a broken sheet of iron in the roof, and a rope hung through the opening, to one end of which was attached a belt.

The trial judge left the case to the jury, under appropriate instructions respecting the obligations of a master to his servant, and the effect of contributory negligence on the part of the servant. He left it to them to decide whether the defendant had furnished Crawford with fit and suitable appliances for doing the work, in view of the condition of the roof at the time, and instructed them that if they believed the testimony of defendant's superintendent they were to conclude that Crawford assumed the risks. In respect to contributory negligence he instructed them that, if they found the version of the superintendent not to be the correct one, still it would be for them to say whether, in the circumstances of the case, Crawford's conduct was free from fault, because they were to bear in mind that he had been employed there some time before, and had been about there for some time previous to the accident; and if they found that he knew of the condition of this roof, or that he ought to have known that it was an unsafe place for him to go without other appliances than the rope, they could well come to the conclusion that it was fault on his part to be there, and, if so, the defendant would be entitled to a verdict.

The principal assignments of error are based upon exceptions to instructions given to the jury at the instance of the defendant. These instructions were as follows:

"First. If snow was on the roof when Crawford was employed to remove the pieces of roofing that were good, no time being fixed in the contract of employment as to when he should begin or finish the work, and the existence of snow upon it increased the risk of doing work upon it, Crawford assumed that risk, whatever it was.

"Second. If snow came upon the roof after the employment of Crawford, and he proceeded to do the work after it fell, without any direction as to when he should begin or complete the work, he did so voluntarily, and, whatever risk arose from the existence of the snow upon the roof at the time Crawford was injured, he assumed.

"Third. The jury had a right to find from the change in the location of the rope after Woods came down, from the fact that the rope was, after the accident, hanging down through the place where Crawford fell, and from the marks that existed on his hands after he fell, that he went over the snow with the rope in his hands for the purpose of protecting himself from breaking through the roof.

"Fourth. If the jury do so find from the facts, it is their duty to find he realized and appreciated the danger, and the defendant is not chargeable with the consequences of his failure to maintain himself by means of the rope he thus relied upon."

"Sixth. It was the duty of defendant to furnish Crawford with such instrumentalities by way of ropes, ladders, and planks as he called for, and if he did not call for such means in the way of ropes, ladders, and planks to the extent that would make his doing the work safe, the fault was his."

"Eighth. That the defendant had the right to rely upon Crawford's assertion of his experience and knowledge, and upon his judgment as to the means required for the performance of the work of removing the plate from the roof in safety, if he did so assert. If the jury find that he did so assert, and they also find his judgment was at fault, and that he did not ask for the requisite means to remove the plates, the defendant is not responsible for the consequences as long as the things asked for by him were furnished by the defendant."

The first and second instructions were obviously correct, and it is difficult to understand how they can be fairly criticised. The roof upon which Crawford's work was to be done was convex in shape, except for a space in the center, and consequently the presence of snow upon the convex part would inevitably increase the chances of his slipping and falling, and might conceal the apparent condition of the sheets, and thereby increase the risk of his breaking through in a weak or defective place. It was patent to any person of common intelligence that, although the snow could not add to the risk of falling through a secure roof, it would add to the risk of falling through a weak one. He knew the size of the sheets, and knew that if one gave away he would fall through the roof, unless he resorted to some expedient for safety. He knew that some of the sheets were not in good condition, because he was to remove only those which were sound enough to be used upon another roof. Under these circumstances he could not have failed to understand that the snow might be an element of danger, more or less serious, according to the strength or weakness of the roof. He may not have fully appreciated the extent of the added danger of breaking through the roof, to which the snow exposed him, but, as he was aware to some extent it was likely to increase the risk, to that extent he was bound to take it into account. To that extent the law presumes that he consented to assume the risk, and the instruction went no further than to so advise the jury. If the instruction had been that, if Crawford knew that the presence of snow was likely to increase the risk of falling through the roof, he assumed the added risk, it would have been strictly correct. That he did know it is indisputable, and it is of no consequence, therefore, that the instruction was not qualified as suggested.

The third and fourth instructions were based upon the evidence which tended to show that when Crawford fell he had a rope in his hands for the purpose of protecting himself from breaking through the roof. It is not urged that the third instruction was erroneous per se, but it is urged that, in conjunction with the fourth instruction, the jury were advised incorrectly. The argument of plaintiff in error upon these instructions is thus presented in the brief of counsel:

"The third request stated that if Crawford did certain things, and took certain precautions (as to which there was no dispute), then the jury might infer that he was guarding against the danger of breaking through the roof. This, standing alone, might have been unexceptionable, but the matter of it was carried forward into the next request, which was a binding instruction that if the facts were as assumed in the third request, and the inference was drawn therefrom which it suggested, then, as a matter of law, Crawford realized and appreciated the danger, and defendant was not liable."

We are unable to appreciate this argument. The fourth instruction was in substance this: If it was true that Crawford knew there was danger of his falling through the roof, and chose to encounter that danger with no other safety appliances than a rope, he assumed the risk of the insufficiency of that appliance, and the defendant was not responsible for the consequences. This was not in effect an instruction that the mere fact that an employé is aware that he is entering upon a dangerous undertaking implies his consent to assume the risks incident to it. There may be a perception of danger without knowledge of the risks; but when an employé appreciates the particular nature of the risk (as in this case, the risk of falling through a defective roof), and consents to face it upon being provided with certain appliances, he certainly assumes the chances that these appliances may prove insufficient.

It is asserted that the sixth request was erroneous because it unduly limited the duty of the defendant to furnish safe, suitable, and sufficient means for doing the work, and made the plaintiff take upon himself a part of the burden which the law imposed upon the defendant. The fault with this proposition is that the instruction is to be considered with those which the trial judge had already given to the jury, and not as an isolated proposition. He had already instructed them in regard to the general duty of an employer towards an employé, and the sixth instruction was addressed to the principal defense which had been litigated upon the trial—the defense that Crawford was aware of the risk involved in the work for which he was engaged, and had himself selected the instrumentalities for doing it. The same observations apply to the exceptions taken to the eighth request.

Viewing the instructions in their entirety, those originally given by the trial judge and those subsequently given at the request of the defendant, we think there was no error in them of which the plaintiff could fairly complain. The rule of implied assumption of risk has been so often declared that it is quite unnecessary to advert to the authorities. Briefly stated, as applicable to a case like this, where the servant was an adult of ordinary intelligence, it is this: The servant accepts all the ordinary risks incidental to the employment in which he engages; not only those which are known to him, but

also those which are readily discernible. He is presumed to have known and appreciated all such risks as were open and obvious to ordinary apprehension. He does not impliedly agree to accept non-obvious or latent risks, in the absence of instruction or information in respect to them. The instructions were not inconsistent with these principles.

As to the assignments of error based upon the exceptions to rulings upon evidence, it suffices, to dispose of the first, that the court made no ruling, so far as appears by the record; and as to the second, that, although the question addressed to the witness was improper, the answer was innocuous, and substituted facts for matter of opinion or legal conclusion.

In conclusion, it is proper to say that the case is one in which we should be reluctant to disturb the judgment. It may be that Crawford entered upon the employment in ignorance of all its risks, but the evidence is overwhelming that the defendant had good reason to believe, in view of his previous experience and his opportunity of examination before he accepted the job, that he adequately understood them. The defendant then placed at his disposal all the instrumentalities and appliances which he required. There was but little more than a scintilla of evidence to authorize the submission of the case to the jury.

The judgment is affirmed.