### HAMMOND v. UNION BAG & PAPER CO.

(Supreme Court, Appellate Division, Third Department. December 30, 1909.)

1. MASTER AND SERVANT (§ 152*)—METHOD OF WORK—INSTRUCTION OF SKILLED EMPLOYÉ—NECESSITY.

　　A skilled carpenter, accustomed to the erection of scaffolds, need not be instructed by his employer as to the proper method of erecting a scaffold with patent jacks, with the use of which he is familiar, and if he is injured by using an improper method his employer is not liable for not instructing him.

　　[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 313; Dec. Dig. § 152.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MASTER AND SERVANT (§ 281*)—INJURY TO CARPENTER—CAUSE OF ACCIDENT
   —EVIDENCE.
       In a suit for injury to an employé by the fall of a scaffold on which he
   was at work, evidence *held* to show that the accident was due to improp-
   er construction of the scaffold by plaintiff and a coemployé, and not to
   any defect in the appliances.
       [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 281.*]

Appeal from Trial Term, Washington County.

Action by Clarence Hammond against the Union Bag & Paper
Company. From a judgment for plaintiff, and from an order denying
a new trial, defendant appeals. Reversed.

Argued before SMITH, P. J., and CHESTER, COCHRANE,
KELLOGG, and SEWELL, JJ.

Edward M. Angell, for appellant.

Henry W. Williams (Joseph A. Kellogg, of counsel), for respondent.

CHESTER, J.  The respondent has secured a verdict against the
defendant in an action for personal injuries.  He was a carpenter,
and while engaged with a fellow carpenter was injured by the fall
of a scaffold upon which they were working in the erection of a mill
for the defendant.  They were directed by the defendant's superin-
tendent to use in constructing the scaffold certain patented adjustable
scaffold jacks, and it required four of the jacks to make the scaffold
which they used.  Each jack was formed of two legs, fastened at the
top and spread at the bottom in the shape of a letter "A," with a
header on the top of each jack, where it was fastened by clamps.
From the center of the cross-piece of the jack a brace extended in
a diagonal direction to the header, to which it was fastened by an
iron thumb-screw clamp.  The legs of the jacks were adjustable, so
that a scaffold could be constructed of any required height.  In the
present instance the scaffold was about six feet from the floor.  The
scaffold was so constructed that the legs could be placed in a vertical
position in relation to the header, or could be spread at the bottom by
the adjustment of the clamps on one end of the brace extending from
the legs to the header.  Across these jacks planks were laid to consti-
tute the floor of the scaffold.  The accident was caused by the slip-
ping of one of the thumb-screw clamps where it was attached to the
header at the upper end of the brace, and the plaintiff was precipitated
to the floor and was injured.  Nothing about the scaffolding or clamps
broke.  The plaintiff was accustomed to the use of this scaffold, and
in his trade as a carpenter had been building scaffolds of different
kinds for years.  He and his fellow carpenter put up the jacks and
scaffold in question, and had used them frequently on prior occasions.

Much of the proof in behalf of the plaintiff was for the purpose of
showing that the scaffolding jacks were not safe and suitable appli-
ances for the use to which they were put, and that the defendant gave
no instructions to the plaintiff as to the proper method of erecting the
scaffold; the theory being that if there were two ways of adjusting
the jacks, with reference to the angle of the legs to the headers and
to the lateral strain on the braces, one of which was safer than the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

other, a duty involved upon the defendant to instruct the plaintiff in reference thereto. But the plaintiff was a skilled tradesman, and was employed as a carpenter. He was accustomed to the erection of scaffolds, and was familiar with the use of this one. If any advice was needed as to the proper method of constructing or assembling such a scaffold, upon whom could the defendant more properly rely than the plaintiff himself. A man who holds himself out as skilled in one of the trades and procures employment as such is in no position to insist that his employer is liable for failure to instruct him in a branch of his trade in which he must be assumed to possess the skill and knowledge necessary to properly pursue it.

The plaintiff had the evidence of an expert that these jacks were insufficient. His opinion was formed, not from having seen the jacks, and not with any knowledge of the size of the timbers of which they were formed, or of their tensile strength, or of the strain upon the clamps, but was based upon a picture of the jacks and upon the testimony he heard in court about them. In addition to this there was the fact that the clamps slipped and caused the platform to fall. As against this evidence there was the evidence of the defendant's witnesses that these jacks had been used a great many times, and had carried upon many occasions, prior to the accident, loads far heavier than was upon the scaffold at the time it fell. This evidence is practically undisputed, except by the fact of the fall on the occasion in question. This makes convincing proof that the jacks fell, not because of any inherent defect in them, but because they were improperly put together by reason of one of the thumb screws not having been sufficiently tightened. It is true that the plaintiff and his fellow carpenter testified they thoroughly tightened them, and that in so doing they had used a wrench; but this evidence is incredible, in view of what happened. The great weight of evidence is that the accident happened, not because of any defects in the thumb screws, the jacks, or the scaffolding, or because they were improper or unsafe appliances, but because they had not been properly put together, and the clamps properly tightened, by the plaintiff and his fellow workman, and the verdict of the jury to the contrary has not sufficient support in the evidence to justify it.

It is urged here that our decision in Chiavaroli v. Union Bag & Paper Company, 131 App. Div. 372, 115 N. Y. Supp. 327, requires us, if we follow it, to affirm this judgment. That was a case where we reversed a judgment of nonsuit in an action brought by the plaintiff, who was an ordinary, unskilled day laborer, and who received injuries from the fall of this scaffold at the same time the plaintiff was injured. But the plaintiff in that case had nothing to do with the erection of the scaffold, and as he was nonsuited we were not favored with the defendant's evidence with respect to the safety of the appliance, nor the uses to which it had been put on prior occasions in supporting greater loads than were on it at the time of the accident. The case is, therefore, not against the position we now take.

· The respondent also urges that because in his complaint sufficient facts were pleaded to justify a recovery under the employer's liability law (Laws 1902, p. 1748, c. 600), and under sections 18 and 19 of the

labor law (Laws 1897, p. 467, c. 415), as well as under the common law, he could invoke these statutory enactments in support of his judgment. But the only question submitted to the jury was under the alleged common-law liability. The questions of the relation of the employer's liability law or the labor law to this accident, or of any liability of the defendant under either of these statutes, were not submitted to the jury, have not been decided in the case, and are not here for review. Nor was there any request to submit these questions to the jury. While the courts will not reverse a correct judgment because founded upon a wrong reason, we cannot assume to review questions that are not properly up for decision.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.