### LEHIGH & WILKES-BARRE COAL CO. v. SAWICKAS.

(Circuit Court of Appeals, Second Circuit. November 13, 1917.)

No. 43.

1. MASTER AND SERVANT ⟷118(9)—MASTER'S LIABILITY FOR INJURY TO SERVANT—USE OF DANGEROUS TOOLS.

Plaintiff, while employed as a miner in defendant's coal mine, was injured by the premature explosion of a powder charge, which he and his helper were shoving into a hole with a steel tamping bar. He had worked in the mine for six years, the last three as a certified miner under the state law (Act June 2, 1891 [P. L. 196]), furnishing his own tools. There was a statutory provision that no tight cartridge should be rammed into a hole with an iron or steel tamping bar, unless the end of the bar was tipped with at least six inches of copper or other soft metal. The bar used by plaintiff was not so tipped, but the cartridge was loose and the hole damp. The method used was customary, and had never previously been known to explode the charge. Plaintiff's theory was that the explosion was caused by a spark struck from rock or "sulphur" by the bar, and the negligence charged against defendant was in permitting plaintiff to use such bar. *Held* that, as such use had not been shown by experience to be dangerous, there was nothing to charge defendant with the duty of preventing it, and that, if it was dangerous, the danger was as patent to plaintiff, as a certified miner, as to defendant; that there was no evidence of negligence to sustain a verdict against defendant.

2. MASTER AND SERVANT ⟷107(1)—MASTER'S LIABILITY FOR INJURY TO SERVANT—USE OF DANGEROUS TOOLS.

The rule charging the master under certain circumstances with the consequences of his servant's use of an unsafe tool does not apply, when the cause of hurt is not furnished by the master, who is not charged with the duty of providing the same.

3. MASTER AND SERVANT ⟷152—MASTER'S LIABILITY FOR INJURY TO SERVANT—FAILURE TO INSTRUCT.

One who holds himself out as skilled in a trade, and thereby procures employment, cannot hold his employer liable for failure to instruct him

⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in a matter he must be assumed to know in order successfully to pursue that trade.

Learned Hand, District Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of New York.

Action at law by Vincent Sawickas against the Lehigh & Wilkes-Barre Coal Company. Judgment for plaintiff, and defendant brings error. Reversed.

Sawickas was a miner in the employ of the Coal Company, and while so employed, and in Pennsylvania, received serious personal injuries by the premature explosion of a blast, which he was preparing with the assistance of his workman or helper. This suit is to recover damages for such injuries. The explosion killed the helper, and no other person was very near when the accident happened, wherefore Sawickas' evidence as to occurrences preceding explosion is the only direct testimony thereupon. By that evidence he was, when injured, 26 years old, had worked in the same mine 6 years, nearly 3 as a laborer or helper, and over 3 as a certified miner, i. e., a person examined by state authority, and given a certificate as qualified to be a miner in "any anthracite coal mine" in Pennsylvania. It was unlawful to employ as a miner any uncertified person. Act Pa. June 2, 1891.

He owned his own tools, and could get them where he chose, though as matter of fact he had procured them all at the company's store. He had fired thousands of blasts before this accident. For the charge that injured him he and his helper bored a hole some six feet deep, prepared a powder cartridge, put it in the hole with fuse attached, as far as possible by hand, and then shoved it back (so as to plant the cartridge at the bottom of the hole) with a steel tamping bar, thus bringing the metal bar end in contact with the powder cartridge, and not with a wad of dirt or other nonexplosive. While so shoving back the cartridge, it exploded, throwing down considerable coal, but also blowing out the untamped blast hole flame and burning powder.

The coal vein on which the injured men were working contains some hard rock, locally known as "sulphur." This Sawickas had long known, and he bored through or past some of it in preparing the blast hole which prematurely fired. He had heard that a blow with steel on "sulphur" would produce sparks, but had never seen it himself. The blast that injured him he was preparing in his usual way, a method he had learned from the miners with whom he had worked before getting his certificate; nor had he ever at any time been instructed or warned that it was dangerous. His entire mining experience had been obtained in defendant's mine.

The Pennsylvania Mining Act (Act June 2, 1891 [P. L. 196]), above referred to, authorizes the following statutory rule: "(30) In charging holes for blasting in slate or rock in any mine, no iron or steel pointed needle shall be used, and a tight cartridge shall not be rammed into a hole in coal, slate or rock with an iron or steel tamping bar, unless the end of the tamping bar is tipped with at least six inches of copper, or other soft metal."

Sawickas had no tamping bar with a copper or other soft metal end, nor had any one ever ordered or recommended that he get one. The cartridge that exploded was, however, not tight, and the blast hole was damp.

Another statutory rule (54) requires that an abstract of said rules and statute "shall be posted up in legible characters in some conspicuous place or places at or near" every mine. Plaintiff testified that he had never seen anything of the kind; there was abundant evidence that such posting had been effected at two places near the mine, necessarily frequented by every miner.

The assignments of error substantially challenge the refusal of the trial judge to direct a verdict for defendant.

De Forest Bros. and Gomer H. Rees, both of New York City (Nathan A. Smyth, Gomer H. Rees, and Leslie Reid, all of New York City, of counsel), for plaintiff in error.

Baltrus S. Yankaus, of New York City (Albert Massey, of New York City, of counsel), for defendant in error.

Before WARD and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). [1] We assume the facts to be as related by the plaintiff below. The action as brought depended, not only upon general rules of law, but on the Employers' Liability Act and mining statutes of Pennsylvania. Of these statutes it is enough to say that none of them makes of the employer or mine owner an insurer. Plaintiff was obliged to prove affirmatively as a prerequisite for recovery that defendant below had been guilty of some actionable negligence.

The complaint herein was supplemented by a bill of particulars, and on turning to that document, to ascertain the sort or kind of negligence of which defendant complains, we find but one allegation which, in the light of Sawickas' own story, needs consideration. The bill asserts in a variety of ways that it was negligent to permit, and not to prevent, plaintiff below from using an iron or steel tamping bar without a copper or other soft metal head.

Assuming for argument's sake that any such duty lay upon the defendant below, it is still necessary to find some causal connection between the use of an uncapped tamper and the explosion producing injury. The plaintiff's theory (and the word is used advisedly) is that the steel tamper must have struck "sulphur," thereby produced a spark, which spark ignited the cartridge and caused the explosion, and that this train of circumstances happened in a damp hole, and had never anywhere happened before to the knowledge of plaintiff, or (it may be added) of any one else who testified herein.

But let it be assumed that the plaintiff below was injured because he was putting in a blast in an improper manner, and especially with an improper tool, that in so doing he did strike a spark, and as a consequence thereof received the injury complained of. He was a certified miner, not only a proper person, but the only kind of person lawfully authorized to do the work he was doing. He had been used to this labor for years, and if it be true that sparks may be produced from damp rock by blows from a steel tamper, he for years had had opportunity of learning the truth about the matter, larger than that of all except other miners. Knowledge of such dangers was part of a miner's equipment for his work, and to ascertain and remember the fact required nothing but ordinary judgment and common observation.

A master is not bound to warn a servant of dangers so patent as to be readily observed by the reasonable use of the senses, considering the age, intelligence, and experience of the observer. Chicago, etc., Co. v. Shalstrom, 195 Fed. 725, 115 C. C. A. 515, 45 L. R. A. (N. S.) 387; King v. Morgan, 109 Fed. 446, 48 C. C. A. 507; Lindsay v. New York, etc., Co., 112 Fed. 384, 50 C. C. A. 298; Crawford v. American, etc., Co., 123 Fed. 275, 59 C. C. A. 293. A knowledge of danger may be presumed from the servant's "abundant opportunities of observation" (Fletcher v. Traction Co., 190 Pa. 117, 42 Atl. 527), and the court may draw such inference (Borck v. Michigan, etc., Works, 111 Mich. 129,

69 N. W. 254). Knowledge of a trade, gained by working thereat, compels a servant to assume the patent dangers thereof, just as fully as does knowledge gained by teaching or instruction in its ordinary sense. Brotzki v. Wisconsin, etc., Co., 142 Wis. 380, 125 N. W. 916, 27 L. R. A. (N. S.) 982.

[2, 3] The rule charging a master, under many circumstances, with the consequences of his servant's using an unsafe contrivance, does not apply when the cause of hurt is not furnished by the master, who is not charged with the duty of providing the same. McKean v. Colorado, etc., Co., 18 Colo. App. 292, 71 Pac. 425, and cases cited. One who holds himself out as skilled in a trade, and thereby procures employment, cannot hold his employer liable for failure to instruct him in a matter he must be assumed to know, in order successfully to pursue that trade. Hammond v. Union, etc., Co., 136 App. Div. 102, 120 N. Y. Supp. 652. Since there is no proof that the master knew of the alleged danger in Sawickas' tools or methods, or that such danger was so notorious that knowledge thereof must be imputed, such decisions as Griffiths v. London, etc., Co., L. R. 12 Q. B. Div. 495, McGowan v. La Plata, etc., Co. (C. C.) 9 Fed. 861, and Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 464, do not apply.

While holding, as above indicated, that defendant below had a right to rely upon this certified miner's knowledge of the matter suggested as the cause of injury, it is also true that, if the accident happened in the way and for the cause necessarily found by the jury, such cause of injury was an unusual and therefore unheard of incident; and the proofs, so far from showing that spark danger with a loose cartridge and a damp hole was usual, make it plain that it could not have been warned against because no one had ever heard of such a thing happening. To predicate negligence on lack of a warning not based on either experience or observation is, we think, unheard of.

It is urged that rule 30, supra, was violated by the use of the tamping bar without a soft metal head. But this rule applies only to instances where a "tight cartridge" is being rammed into a hole. The cartridge in this instance was not tight, and the rule inapplicable.

Finally, it is suggested that defendant is liable because it did not have the statute and rules posted in compliance with the rule, supra. Of this contention it may be observed (1) that in response to appropriate interrogatories no such charge of negligence is contained in the bill of particulars; (2) since the cartridge was not tight, there was no violation of the rule, and the injury could not have flowed from a failure to post rules which were not violated; (3) plaintiff does not testify that the rules were not posted, but only that he had not seen them. This is unavailing against uncontradicted evidence that they were posted in several places in compliance with the statute.

A verdict should have been directed for defendant below. Judgment reversed, with costs.


LEARNED HAND, District Judge (dissenting). There was some evidence that a spark from the bar fired the charge. Suppose the bar had ruptured the cartridge and exposed the powder. One witness,

Joseph Dapkawitz, swore that powder would fire from such a spark. Assuming that the accident did happen as the plaintiff said, I can see no other explanation. I might have thought the explanation too improbable to allow me to accept the story at all; but if I did accept the story, and here I must, I should have taken the explanation with it as the only possible way to account for the explosion which indubitably happened. The existence of rule 30, moreover, appears to me to show that it was known that similar explosions might occur, and the whole evidence of the supposed danger from the method adopted corroborates the possibility.

Nor can I see, especially if the plaintiff's explanation of the explosion is thrown out as beyond any legitimate inferences from the evidence, how it can be supposed that ordinary judgment and common observation would have disclosed the danger. I agree that experience showed it was a very remote danger; apparently this was the first instance of it. How far it should have been anticipated was another matter. If the miner were on an equal footing of experience with the owner, there would be, of course, no reason to require the owner to instruct him. Surely he is not. Seeing the work going on about him in the way which eventually undid him, and having no instruction against it, the jury might have concluded that a prudent man would think it safe.

Yet I think that there was room to say that the danger was enough within customary foresight to charge an owner with some precautions. Rule 30 does not, of course, cover this case, but it shows that, when a steel bar ruptures a tight cartridge, its sparks may fire the powder. The question is whether, if a steel bar is used to tamp a free cartridge, it may not rupture it, and then fire it in the same way. It is true that this contingency was apparently too remote to justify a rule against it, but not conclusive. Some of the witnesses said that they put a dirt wad between the bar and the cartridge when driving it in, and Rowan, a supposed expert, said that to drive it in with a steel bar was dangerous. One of the defendant's own witnesses, Kelly, said that there was a tradition among miners against it, though he himself thought it safe. The fact that no instance of explosion from the method was recorded does not, however, necessarily absolve the master from precautions. I cannot see how we may take from the jury the question whether the traditional fear among miners was wholly unfounded.

Finally, the plaintiff's certification as a miner under the law seems to me irrelevant. It had no effect upon the mutual duties of the parties; the law was only a police regulation of Pennsylvania. I agree that, if a stranger presented such a certificate, the master might assume that he already possessed the rudiments of his calling. The critical question, however, is always this: How far would a prudent master suppose the servant qualified? If the master had other evidence bearing on his qualifications, the certificate would only be evidence with the rest, going to establish how far he might think instructions necessary. Here the master knew just what the miner's experience had been. At most he could only have asked that the jury consider whether the board's certification of the plaintiff might not have assured him

that the plaintiff must have learned in some other way of those dangers which the master himself had failed to teach him. I cannot see why we should say that it must have satisfied him. To say the master may excuse his default, because an official fails to detect its result, must perplex the victim of each.

While I should not have reached this verdict myself, I cannot see how we can reverse the judgment without taking over the decision of what have aways been called questions of fact. I dissent.