### ATCHISON, T. & S. F. RY. CO. v. WYER.

(Circuit Court of Appeals, Eighth Circuit. September 5, 1925.)

No. 6911.

**1. Master and servant ⊝150(1)—Necessity of warning must be suggested.**

Before an employer can be held liable for failure to warn a servant, there must be something to suggest to him that a warning is necessary.

**2. Master and servant ⊝150(8)—Duty of master to warn stated.**

There is no duty of an employer to warn, where he has no reason to expect the contingency of the servant placing himself in such position as to incur the danger, or where the servant already has sufficient knowledge of the conditions to enable him to safeguard himself.

**3. Master and servant ⊝154(1)—Master held not negligent in failing to warn servant.**

Plaintiff employed in the machine shop of defendant railroad company, was working in the pit under an engine, which he was helping to dismantle, when, slightly losing his balance, he grabbed hold of a heavy spring, which had been detached by plaintiff from the saddle on which it rested, and, being unstable, fell on and injured him. He had helped in such work before, and knew that the spring, when the fastenings were removed, was very easily tilted from the saddle. *Held*, that his injury was due to accident, and that defendant was not liable therefor on the ground of negligence in failing to warn plaintiff.

**4. Master and servant ⊝206—Risks incident to work assumed.**

An employee assumes risks ordinarily incident to his employment, so far as they are not attributable to employer's negligence.

**5. Master and servant ⊝217(1)—Risks assumed by servant knowing them.**

An employee assumes risks not ordinarily incident to his employment, provided he knows of them and appreciates the danger, or provided they are so plainly observable that he must be presumed to know them and to appreciate the danger.

**6. Master and servant ⊝208(1)—Servant assumes risk of changing conditions of work.**

Where the risks of an employment are variable, owing to changing conditions, either in the character of the work or in the way it is performed, the employee assumes the risk of such changing conditions, and especially where the changed conditions have been brought about by himself or his fellow servants.

**7. Trial ⊝141, 143—Grounds for direction of verdict stated.**

It is the duty of the trial court to direct a verdict at the close of the evidence in two classes of cases: (1) In that class in which the evidence is undisputed; and (2) in that class in which the evidence is conflicting but is of so conclusive a character that the court, in the exercise of a sound judicial discretion, would set aside a verdict in opposition to it.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action at law by W. J. Wyer against the Atchison, Topeka & Santa Fé Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

George M. Green, of Oklahoma City, Okl. (J. R. Cottingham, E. E. McInnis, and Frank G. Anderson, all of Oklahoma City, Okl., and Gardiner Lathrop, of Chicago, Ill., on the brief), for plaintiff in error.

H. L. Stuart, of Oklahoma City, Okl. (L. C. Barrett and F. P. Works, both of Amarillo, Tex., and Ledbetter, Stuart, Bell & Ledbetter, of Oklahoma City, Okl., on the brief), for defendant in error.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

BOOTH, Circuit Judge. Defendant in error, plaintiff below, recovered a verdict for damages on account of personal injuries claimed to have been caused by negligence of the railway company, hereafter called defendant.

Several items of negligence were alleged in the complaint, but the particular count of negligence upon which plaintiff relied at the trial was failure on the part of defendant to warn him of the danger in his work. Defendant in its answer denied negligence, and set up assumption of risk and contributory negligence on the part of the plaintiff. The main facts disclosed by the record are as follows:

At the time of the accident, plaintiff had been employed about one month in the machine shops of defendant at Clovis, N. M., as a helper in the mechanical department. He was 27 years of age; had had some experience with farm machinery and automobiles. In his application for employment, he stated that he had worked as a mechanic. While in the employ of defendant, he had helped to dismantle an engine, taking down the side rods, and removing the tires from the wheels and the wheels from the axles. On the day of the accident he was helping to dismantle

another engine, from which the driving wheels had been removed. The engine was resting upon dollies. Beneath the engine was a pit 3 or 4 feet deep. Plaintiff had been told by his foreman to take the hangers off from the driving springs. Each of these springs rested on a saddle which spanned the frame of the locomotive. The spring weighed about 375 pounds. Projecting up from the saddle was a lug pin, which was riveted to the saddle. This lug pin engaged a hole in the bottom of the spring band. This lug pin, together with the hangers on the ends of the spring and the weight superimposed on the spring, all helped to keep the spring in its proper relative position on the saddle. In view of its function, it was not feasible to fasten the spring securely to the saddle. When the weight resting upon the spring was removed, and one or both of the hangers were also removed, the spring would tip easily; and it was then open to view that the spring was not fastened to the saddle, but could be easily toppled therefrom.

Plaintiff knew this condition. He had removed one spring prior to the accident, and testified in relation thereto: "I had removed one spring once before, so I could get around without touching this spring and knock it off." One of the witnesses testified that plaintiff and his coworker had taken off two other springs. Plaintiff himself further testified that he had revolved one of the springs on the saddle; also that one of the springs had tipped sufficiently to pinch him. On cross-examination he was asked: "Now then, you could have tilted the spring at that time, and looked under there and seen how it was constructed, could you not? A. I don't know about that. Q. Don't you know, if you had tried, you could have found out? A. If I tipped it far enough, I was liable to tip it off, so it would strike me."

At the time of the accident plaintiff had finished taking the hangers off from three springs on one side of the engine. He was climbing down from the position he had occupied in taking off the last hanger, and was intending to go to the other side of the engine to remove the hangers from the springs on that side. While climbing down, he changed his hammer and cold chisel from his right to his left hand. In so doing he lost his balance slightly, and thinking that he was about to fall, in order to save himself, grabbed hold of the spring. It tipped with him. He fell into the pit, and the spring fell upon him, causing the injuries complained of.

[1, 2] As before stated, the sole count of negligence relied upon was failure to warn plaintiff of the danger in his work. The rule that it is the duty of a master to use ordinary care to warn an employee of danger in his work is not of unlimited application. Labatt, in his work on Master and Servant, states several limitations:

Section 209a: "Both upon principle and authority it is clear that a master cannot be deemed culpable on the ground of an omission to give warning, where the servant already possesses sufficient knowledge of the conditions to enable him to take appropriate precautions for safeguarding himself."

Section 236: "No right of action is established where, taking into consideration the nature of the work assigned to the servant, the master had no reason to expect the contingency of the servant's placing himself in such a position as to incur the danger with regard to which it is alleged that he should have been instructed."

Section 241: "Before an employer can be held liable for a failure to warn, there must be something to suggest to him that a warning is necessary. Unless this necessity was or ought to have been known to him, he is considered to be justified in acting upon the assumption that the servant understood the dangers to which he was exposed, and would take appropriate precautions to safeguard himself."

These principles have found application in many cases, among them Mississippi River Logging Co. v. Schneider, 74 F. 195, 20 C. C. A. 390; L. & N. R. Co. v. Miller, 104 F. 124, 126, 43 C. C. A. 436; King v. Morgan, 109 F. 446, 449, 48 C. C. A. 507; Lake v. Shenango Furnace Co., 160 F. 887, 892, 88 C. C. A. 69; C. B. & Q. R. Co. v. Shalstrom, 195 F. 725, 729, 115 C. C. A. 515, 45 L. R. A. (N. S.) 387; Lehigh & Wilkes-Barre Coal Co. v. Sawickas, 247 F. 432, 159 C. C. A. 486; Manley v. Minneapolis Paint Co., 76 Minn. 169, 78 N. W. 1050.

[3] Applying these principles to the facts in the case at bar, we are clearly of the opinion that the question of defendant's negligence in failing to warn the plaintiff was not for submission to the jury. The occupation was not specially hazardous. The machinery was not defective. The company had the right to assume that plaintiff was qualified to do the work. The danger of tipping the spring when it was freed from the hangers was open and apparent, and well known to the plaintiff. He knew that the spring could be easily removed. He had removed one and helped to remove two others.

He had himself produced this unstable condition of the spring in the ordinary course of his work. Even in this unstable condition, the spring would have remained stationary, and the accident would not have happened, if plaintiff had not lost his balance and tried to save himself by grabbing hold of the spring. Such a contingency could not reasonably have been anticipated by the defendant company.

[4, 5] There is another reason why plaintiff was not entitled to recover a verdict upon the record. He had assumed the risks of the situation. It is elementary that an employee assumes the risks ordinarily incident to his employment, so far as they are not attributable to the employer's negligence. He also assumes risks not ordinarily incident to his employment, provided he knows of them and appreciates the danger, or provided they are so plainly observable that he must be presumed to know them and to appreciate the danger. C., O. & G. R. Co. v. McDade, 191 U. S. 64, 67, 24 S. Ct. 24, 48 L. Ed. 96; Gila Valley, etc., Ry. Co. v. Hall, 232 U. S. 94, 34 S. Ct. 229, 58 L. Ed. 521; Ches. & Ohio Ry. Co. v. Proffitt, 241 U. S. 462, 36 S. Ct. 620, 60 L. Ed. 1102; Southern Pac. Co. v. Berkshire, 254 U. S. 415, 41 S. Ct. 162, 65 L. Ed 335; Bohn Mfg. Co. v. Erickson, 55 F. 943; 5 C. C. A. 341; Crawford v. American Steel & Wire Co., 123 F. 275, 59 C. C. A. 293; St. Louis Cordage Co. v. Miller, 126 F. 495, 501, 508, 61 C. C. A. 477, 63 L. R. A. 551; Glenmont Lumber Co. v. Roy, 126 F. 524, 61 C. C. A. 506; Lake v. Shenango Furnace Co., 160 F. 887, 891, 88 C. C. A. 69; C., B. & Q. R. Co. v. Shalstrom, 195 F. 725, 115 C. C. A. 515, 45 L. R. A. (N. S.) 387; H. D. Williams Cooperage Co. v. Sams, 198 F. 852, 117 C. C. A. 494.

[6] And where the risks are variable, owing to changing conditions either in the character of the work or in the way it is performed, the employee assumes the risk of such changing conditions; and especially is this true where the changed conditions have been brought about by himself or his fellow servants. G., C. & S. F. Ry. Co. v. Jackson, 65 F. 48, 12 C. C. A. 507; Finalyson v. Utica Mining & Milling Co., 67 F. 507, 14 C. C. A. 492; Moon-Anchor Consol. Gold Mines, Ltd., v. Hopkins, 111 F. 298, 49 C. C. A. 347; American Bridge Co.

v. Seeds, 144 F. 605, 75 C. C. A. 407, 11 L. R. A. (N. S.) 1041. In the instant case the changed condition of the spring as to stability was produced by plaintiff himself in the performance of his work. The evidence above recited shows, not only that he knew of the changed condition, but appreciated the risk.

Our conclusion is that the motion for a directed verdict should have been granted, both because the evidence failed to show negligence on the part of defendant, and also because the evidence conclusively showed assumption of risk on the part of plaintiff. It is true that plaintiff testified that he thought the spring was fastened to the saddle, but this conclusion can avail nothing, in view of his further testimony, above recited, as to what he knew and what he did, and in view of the other uncontradicted testimony above recited to the same effect.

[7] It is the duty of the trial court to direct a verdict at the close of the evidence in two classes of cases: (1) That class in which the evidence is undisputed; and (2) that class in which the evidence is conflicting, but is of so conclusive a character that the court, in the exercise of a sound judicial discretion, would set aside a verdict in opposition to it. Small Co. v. Lamborn, 267 U. S. 248, 45 S. Ct. 30, 69 L. Ed. 587; Ewert v. Beck, 235 F. 513, 149 C. C. A. 59; Fricke v. International Harvester Co., 247 F. 869, 871, 160 C. C. A. 91; New Amsterdam Casualty Co. v. Farmers' Co-op. Union of Lyons, Kan. (C. C. A.) 2 F.(2d) 214; Walton Trust Co. v. Taylor (C. C. A.) 2 F.(2d) 342; Kintyre Farmers' Co-op. Elevator Co. v. Midland National Bank (C. C. A.) 2 F. (2d) 348. We think the instant case is within the rules stated.

The assignments of error raise the question of the effect of the adoption of the federal Employers' Liability Act (Comp. St. §§ 8657–8665) into the Constitution of the state of New Mexico. As the decision of. this question is not necessary to a disposal of the present case, and as the question has not been passed upon by the Supreme Court of the state of New Mexico, so far as we are advised, we omit decision and discussion of the question.

Judgment reversed, and cause remanded, with instructions to grant a new trial.