*United States v. Murphy*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of July, two thousand twenty-four.

PRESENT:
> **GERARD E. LYNCH,**
> **SUSAN L. CARNEY,**
> **MICHAEL H. PARK,**
> *Circuit Judges.*

_____

**United States of America,**

> *Appellee,*

> **v.**                                                          23-6470

**Ernest Murphy,**

> *Defendant-Appellant.*\*

_____

| | |
|---|---|
| **FOR APPELLEE:** | JUN XIANG (Matthew J.C. Hellman & Karl Metzner, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY. |
| **FOR DEFENDANT-APPELLANT:** | MARTIN S. BELL, Simpson Thacher & Bartlett LLP, New York, NY. |

Appeal from an order the United States District Court for the Southern District of New York (Sullivan, *J.*).

---

\* The Clerk of Court is directed to amend the caption accordingly.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's order is **AFFIRMED**.

After we affirmed Defendant-Appellant Ernest Murphy's conviction and sentence for his role in a drug conspiracy, *see* No. 20-622, 2021 WL 3826571 (2d Cir. Aug. 27, 2021), he moved for a new trial and to dismiss Count 2 of the superseding indictment against him, which charged him with possessing a firearm in furtherance of a drug-trafficking crime and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c), 2. The motion argued that newly disclosed evidence revealed that the government violated its obligations under *Brady v. Maryland* and knowingly or recklessly misled the grand jury into indicting Murphy on Count 2. The district court denied the motion, and Murphy now appeals. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

**I.      None of the late-disclosed evidence was material, so a new trial is unwarranted.**

*Brady v. Maryland*, 373 U.S. 83 (1963), requires the government to disclose to defendants evidence that is favorable, suppressed, and prejudicial. *United States v. Hunter*, 32 F.4th 22, 31 (2d Cir. 2022). Evidence is prejudicial if it is material to the defendant's guilt or punishment. *Brady*, 373 U.S. at 87. Materiality for these purposes turns on whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Stillwell*, 986 F.3d 196, 200 (2d Cir. 2021). Undisclosed impeachment evidence may also be material "where the witness in question supplied the only evidence linking the defendant to the crime." *United States v. Avellino*, 136 F.3d 249, 256 (2d Cir. 1998). But "where ample ammunition exists to attack a witness's credibility, evidence that would provide an additional basis for doing so is ordinarily deemed cumulative and hence immaterial." *United States v. Orena*, 145 F.3d 551, 559 (2d Cir. 1998). "Where suppressed evidence is

inculpatory as well as exculpatory, and 'its exculpatory character harmonize[s] with the theory of the defense case,' a *Brady* violation has occurred." *United States v. Mahaffy*, 693 F.3d 113, 130 (2d Cir. 2012) (quoting *United States v. Triumph Cap. Grp.*, 544 F.3d 149, 164 (2d Cir. 2008)). "Materiality in this context presents us with a mixed question of law and fact." *United States v. Madori*, 419 F.3d 159, 169 (2d Cir. 2005). "While the trial judge's factual conclusions as to the effect of nondisclosure are entitled to great weight, we examine the record *de novo* to determine whether the evidence in question is material as a matter of law." *Id*.

Murphy identifies three categories of evidence that were allegedly suppressed and material. But he fails to "show that 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *United States v. Jackson*, 345 F.3d 59, 73 (2d Cir. 2003) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

*First*, Murphy points to a 2015 recording of a law-enforcement interview of coconspirator Tyquan Robinson. On the recording, Robinson admitted that he participated in a 2015 altercation with a rival drug dealer but denied using a gun in the altercation. At trial, coconspirator Maurice Curtis testified that Robinson admitted to him that he was the shooter in the 2015 altercation. Murphy argues that he could have undermined both Curtis and Robinson's credibility—and the government's theory that the conspiracy regularly used firearms to advance its interests—had he known of the 2015 Robinson recording before trial.

The 2015 recording was not material for *Brady* purposes. Although it may have been admissible, *see* Fed. R. Evid. 806, the recording was not exculpatory. Robinson confessed his involvement in the 2015 shooting during his prosecution for his role in the conspiracy. So, if Murphy had offered the 2015 recording, the government could have rehabilitated both Curtis and Robinson's credibility with Robinson's plea allocution in which he admitted that he was the

3

shooter in the 2015 shooting and that it was drug-related. *See* Fed. R. Evid. 806 ("[T]he declarant's credibility may be attacked, *and then supported*, by any evidence that would be admissible for those purposes if the declarant had testified as a witness." (emphasis added)). Even setting aside what the government could have done, the value of the 2015 recording was low given the strength of the government's other evidence. *United States v. Gil*, 297 F.3d 93, 103 (2d Cir. 2002) ("Where the evidence against the defendant is ample or overwhelming, the withheld *Brady* material is less likely to be material than if the evidence of guilt is thin."). For example, law enforcement arrested Murphy at home, where they found crack, heroin, and two loaded magazines. The government also introduced recordings of the conspirators, including Murphy, discussing using firearms in connection with their drug dealing. And a law-enforcement witness testified that he recovered a loaded gun in the in a stash house on Decatur Street in Brooklyn that Murphy and his coconspirators used. Moreover, Murphy possessed ample evidence with which to impeach Curtis's credibility. *See Jackson*, 345 F.3d at 74 ("A new trial is generally not required when . . . the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable."). We thus agree with the district court that there is no "reasonable probability of a different result," *Kyles*, 514 U.S. at 434, if Murphy had possessed the 2015 recording before his trial.

*Second*, Murphy points to a pair of recordings made during the 2017 interrogations of two of his coconspirators, Tyshawn Burgess and Kerry Felix. Both men told investigators that they were not involved in the 2017 shooting of a rival gang member. This conflicted with the testimony of Curtis, who said that Felix told him that he and Burgess were responsible for the shooting. As with the 2015 Robinson recording, Murphy argued that the 2017 recordings could have undermined the credibility not only of Curtis, but also of Burgess and Felix—neither of whom

4

testified at trial—and could have allowed him to warn the jury that the shooting was unrelated to the conspiracy.

Although the recordings of Burgess and Felix may have been admissible under Rule 806, neither was exculpatory. As with the 2015 recording, both Burgess and Felix later admitted their roles in the 2017 shooting. So the government would have rehabilitated, and indeed bolstered the credibility of Curtis, Burgess, and Felix if Murphy had offered the 2017 recordings. Against the backdrop of the government's evidence, we agree with the district court that the 2017 recordings could not have established a reasonable probability of a different result.

*Finally*, Murphy points to a 2018 recording of an interview Robinson gave after his arrest on the indictment here. Robinson was arrested at a stash house on Decatur Street in Brooklyn. Inside, police found drugs, cash, and a loaded pistol. Next to the gun and drugs, police found Western Union receipts and insurance documents bearing Murphy's name. No direct physical evidence linked Murphy to the gun, but the government introduced the Decatur Stash House evidence as circumstantial evidence against Murphy. On the 2018 recording, Robinson at first stated that he and Murphy used the Decatur Stash House only for smoking; he denied knowing whether the gun the police found there belonged to Murphy or whether Murphy engaged in drug distribution at the time of the search. Later in the recording, Robinson changed his tune and said that the Stash House was Murphy's "crib" and that the contraband found there—including the gun, crack cocaine, and heroin—was Murphy's. Murphy argues that Robinson's initial statements would have exculpated him in the jury's eyes.

As the district court correctly noted, the admissibility of the 2018 recording is dubious, thus undermining its materiality for *Brady* purposes. *See Gil*, 297 F.3d at 104. But even assuming Murphy would have been able to present the 2018 recording, the jury likely would have heard both

5

the exculpatory and inculpatory portions. *See* Fed. R. Evid. 106. And, once again, the government's evidence was overwhelming. Although the first part of the 2018 Robinson recording may have undermined Murphy's connection to the gun found in the Decatur Stash House, the government's charge in Count 2 was broader than that one gun. The jury was properly instructed that it could find Murphy guilty if it found that Murphy participated in the underlying drug conspiracy and knew that a conspirator possessed a gun in furtherance of the conspiracy's aims. *See Rosemond v. United States*, 572 U.S. 65, 67 (2014). The 2018 recording would have failed to undermine the numerous wiretapped conversations the government introduced in which Murphy discusses using guns with coconspirators. At oral argument, Murphy contended that, had he known of this recording, he could have called Robinson himself to testify that Murphy did not own the gun found at the Decatur Stash House. But he did not make that argument in the district court or in his brief to this Court. In any event, Robinson had a Fifth Amendment privilege to refuse to testify. Had Robinson waived that privilege, he could have been impeached by his later retraction of that position in the 2018 interview, and his guilty plea to a 2015 shooting. Robinson's plea agreement with the government did not immunize him from perjury charges, so if Robinson testified favorably to Murphy, he would have opened himself up to a separate prosecution. Moreover, two members of the conspiracy were recorded discussing their understanding that Murphy had ordered that Robinson be killed because he believed that Robinson was cooperating against him. So the odds that Robinson would testify at all, let alone favorably to Murphy, were slim. Like the other recordings, the 2018 Robinson recording does not raise a reasonable probability that the outcome of Murphy's trial would have been different.

In short, none of the coconspirator recordings the government disclosed to Murphy after trial—alone or together—raised "a reasonable probability of a different result." *Kyles*, 514 U.S. at 434. We thus affirm the district court's decision to deny Murphy's motion for a new trial.

To the extent Murphy sought dismissal of the § 924(c) charge against him on *Brady* grounds, the district court properly denied that relief too. It is well established that "the proper remedy for a Brady violation is vacatur of the judgment of convictions," not a dismissal of the indictment. *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (en banc).

**II.     The petit jury's guilty verdict renders harmless any missteps before the grand jury.**

Murphy argues that the government so misled the grand jury into indicting him on Count 2 that dismissal of that count is warranted. The alleged deceit came in the context of testimony related to a 2013 shooting. The government—through a Special Agent—told the grand jury that Murphy had asked an associate to retrieve a gun connected to that shooting and that Murphy's DNA was found on the gun. But the government did not tell the grand jury that Murphy had been acquitted of charges related to that shooting and that Maurice Curtis—the government's cooperating conspirator—had proffered that Murphy wasn't a member of the conspiracy at the time of the shooting and that the shooting wasn't drug-related. The district court ultimately excluded from trial almost all evidence related to the 2013 shooting. Still, Murphy argues that in its presentation of the evidence related to the 2013 shooting, the government recklessly misled the grand jury warranting dismissal of the indictment is warranted...

Dismissal of an indictment because of government misconduct before the grand jury is appropriate only if a knowing or recklessly misleading statement as to an essential fact "substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*

*v. United States*, 487 U.S. 250, 256 (1988); *United States v. Lombardozzi*, 491 F.3d 61, 79 (2d Cir. 2007). "[T]he mere fact that evidence presented to the grand jury was unreliable, misleading, or inaccurate, is not sufficient to require dismissal of an indictment." *Lombardozzi*, 491 F.3d at 79. Dismissal of the indictment is especially unwarranted when "[t]he particular claims of impropriety before the grand jury . . . concern the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence[, or] error in explaining the law"—improprieties that could be "cured in the trial before the petit jury." *Lopez v. Riley*, 865 F.2d 30, 33 (2d Cir. 1989).[†]

The government has no "legal obligation to present exculpatory evidence" to the grand jury because such an obligation "would be incompatible with [the grand jury] system." *United States v. Williams*, 504 U.S. 36, 52 (1992). And although the district court excluded most evidence related to the 2013 shooting, the jury still found Murphy guilty, proving that there was probable cause to charge him with violating § 924(c). *United States v. Mechanik*, 475 U.S. 66, 70 (1986); *id*. at 67 ("[T]he petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted."). So Murphy's conviction "must stand despite the [alleged] violation" before the grand jury. *Id*.

*     *     *

---

[†] While the government may not have knowingly misled the grand jury, we are troubled by its presentation of evidence related to the 2013 shooting—evidence the government knew could not support a § 924(c) charge. Nobody disputes, for example, that the 2013 shooting predated Murphy's participation in the conspiracy and was unrelated to drug trafficking. But the government's presentation of the 2013 shooting created confusion, leading a grand juror to ask twice whether the 2013 shooting was "drug trafficking . . . related." In response, the government never clarified that the 2013 shooting was not in furtherance of the conspiracy, even though the available evidence showed as much. Instead, as the district court recognized, the government seemed to suggest that 2013 shooting could support a § 924(c) charge against Murphy and was related to drug trafficking. We note that the lawyer arguing the case for the government in this Court was not the lawyer who conducted the grand jury proceedings.

We have considered all of Murphy's remaining arguments and find them to lack merit. Accordingly, we **AFFIRM** the district court's order denying Murphy's motion for a new trial and to dismiss the indictment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court